In re MILLER'S ESTATE.
MILLER et al. v. LIVINGSTON et al.

No. 1996. Decided June 28, 1909 (102 Pac. 996).

1. WILLS—UNDUE INFLUENCE—EVIDENCE. In an action to revoke, on the ground of undue influence, a will in favor of testator's second wife to the disadvantage of his children by his first wife, evidence that shortly after the death of the wife some of her clothing was worn by the second one, and that the remonstrances of the children against such conduct were unavailing, was admissible in connection with evidence tending to show a continued influence exercised by the second wife. (Page 233.)

2. EVIDENCE—OPINION EVIDENCE. In an action to revoke a will on the ground of undue influence exercised by testator's second wife

to the disadvantage of his children by his first wife, witnesses testified as to the testator's "feelings" toward his children; that the second wife "hated" them; that "nothing she could say was bad enough;" that she took every opportunity "to malign his family;" that "a look or a word from her would stop him in the middle of a conversation, and he was in constant fear lest he would say something that might offend her;" that "he was constantly under her influence and control inasmuch as he did not dare to express an opinion about his children in her presence;" that "he was cowed down by her," and that "she showed him no consideration whatever," and that at times she was "bitter," "agitated," and in "a state of suppressed excitement." *Held* proper opinion evidence. (Page 233.)

3. EVIDENCE—OPINION EVIDENCE. Opinions or conclusions of ordinary witnesses derived from common experience and observation of things which persons generally are capable of comprehending and understanding are admissible in evidence when the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time, or where it is not practicable to lay before the jury the primary or constituent facts, so that they can draw the proper inferences and form an intelligent judgment. (Page 234.)

4. EVIDENCE—OPINION EVIDENCE. A witness before expressing his opinion in a case where the opinion is admitted because the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury should show his acquaintance with the subject matter and his opportunities for observation. (Page 234.)

5. EVIDENCE—OPINION EVIDENCE—EXAMINATION OF WITNESS. The witness in such case should generally be required to state such constituent facts as he is able to detail. (Page 234.)

6. EVIDENCE—OPINION EVIDENCE. In an action to revoke a will on the ground of undue influence exercised by testator's second wife to the disadvantage of his children by his first wife, testimony that the testator "always manifested the greatest affection for his children," and that his demeanor toward them was "affectionate," was admissible. (Page 234.)

7. WILLS—UNDUE INFLUENCE—EVIDENCE. Testator's declarations to the effect that, if he and his children were to live in peace and avoid trouble, they would have to do just as his wife said, and that he requested his children to do anything his wife asked so that he could have peace, and that "after a scene with her he always suffered from nervous attacks," were admissible. (Page 234.)

8. APPEAL AND ERROR—HARMLESS ERROR—RULINGS AS TO EVIDENCE. Where a witness testified somewhat in detail concerning her visits and associations with the testator and his wife, their demeanor and conduct toward each other, conversations had with the testator and his wife, and things said and done by them, the denial of a motion to strike a statement of the witness that testator was afraid of his wife, and "dared not reply though goaded beyond endurance by her attacks on his family," was not prejudicial.   (Page 235.)

9. EVIDENCE—PAROL EVIDENCE—BEST EVIDENCE.   In an action to revoke a will on the ground of undue influence exercised by testator's second wife to the disadvantage of his children by his first wife, a witness testified that testator "always warned us in his letters never to mention anything that he said to us on that subject, as his wife would read the letters first, and, if they contained anything of that kind, would make it uncomfortable for him."   Held not objectionable or parol evidence of the contents of a writing, since the matter was collateral, and witness did not give the contents of the letters, but merely the subject-matter to which they referred.   (Page 235.)

10. EVIDENCE—BEST EVIDENCE—COLLATERAL FACTS.   The rule requiring the best evidence does not apply to collateral writings and independent facts.   (Page 235.)

11. TRIAL—ORDER OF PROOF—REBUTTAL.   Evidence, even if not strictly in rebuttal, is admissible in the discretion of the trial court if material and relevant to the issue.   (Page 235.)

12. TRIAL—INSTRUCTION.   In a will contest on the ground of undue influence, the court refused a requested instruction to the effect that influence acquired by kindness and affection is not undue influence.   The court, in substance, charged that undue influence is that degree of importunity which deprives a testator of his free agency, so that the instrument executed is not his free and unconstrained act.   Or undue influence is any improper or wrongful constraint, urgency, or persuasion whereby the will of a person is overcome, and he is induced to do an act which he would not do if left to act freely; that, to constitute undue influence, the influence must destroy free agency so that the will results from domination of the mind of another, rather than the expression of the will and mind of the testator; and that one may induce another to make a will in his favor by kind conduct.   Held, that there was no error in refusing the request.   (Page 236.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Margaret 'Miller and others against Elizabeth Livingston, as administratrix of Margaret Miller, deceased, and individually, and others.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*Willard Hamer* and *Oscar Carlson* for appellants.

*James D. Parclee* and *Powers & Marioneaux* for respondents.

### APPELLANT'S POINTS.

A will which is solely the result of kindness and good nature, showing themselves in acts of attention and services on the part of the beneficiary towards the testator in caring for him or in attending to his needs in sickness or in health is not procured by undue influence . . . There can be nothing improper or savoring of undue influence if the persons who are brought in contact with the testator are prompted to administer to him by reason of an expectation that he will leave them a portion of his property by will. (1 *Underhill on the Law of Wills,* sec. 143; 1 *Redfield on Law of Wills,* 527; *Id.,* 229; *Norton v. Paxton,* 110 Mo. 456, 457; *Sechrest v. Edwards,* 4 Met. [Ky.] 163; *Lowe v. Williams,* 2 N. J. Eq. 82, 88; *In re Williams Will,* 9 N. Y. Sup. 778; *Gleespin's Will,* 26 N. J. Eq. 523; *McCulloch v. Kamball,* 49 Ark. 367; *Nicholas, et al., v. Kershner et al.* 20 W. Va. 251, 257; *Kerr v. Lunsford,* 31 W. Va. 659, 680; *Children's Aid Society v. Loveridge,* 70 N. Y. 387, 394; *Gardiner v. Gardiner,* 34 N. Y. 155; 29 Am. and Eng. Ency. Law, 106.)

STRAUP, C. J.

This action was brought to revoke a will alleged to have been made under undue influence. The case is here on a second appeal. A statement of the facts and the opinion

of the court on the first appeal are found in 31 Utah 415, 88 Pac. 338. On the second trial the case was tried to the court and a jury. All the evidence produced at the first trial was produced on the second trial. The evidence which, on the first appeal, was held improperly excluded, was admitted on the retrial. Additional evidence was also adduced, but it in the main was only cumulative to that adduced on the first trial. A verdict was rendered in favor of the plaintiffs, and a judgment revoking the will was entered accordingly. The defendants and proponents appeal.

No point is made in appellants' brief that the evidence is insufficient to support the verdict, nor that the court erred in the instructions given the jury. The questions raised and discussed pertain to rulings of the court (1) in admitting in evidence matters claimed to be too remote; (2) in admitting in evidence opinions or conclusions of witnesses; (3) in refusing to strike answers of deponents in depositions as being not responsive and not the best evidence; (4) in permitting the plaintiffs to put matters in evidence claimed to be not rebuttal; and (5) in refusing to give certain requests to charge.

The person alleged to have exercised the undue influence was the second wife of the testator, the sole legatee of the will. The plaintiffs are children by his first wife. He married the second wife shortly after the death of his first wife. Much evidence was given tending to show that the second wife manifested feelings of prejudice, jealousy, and hostility toward the testator's children, and that she unduly persuaded him to disinherit them and to bequeath and devise all his property to herself; that such feelings were manifested shortly after her marriage, and continued until after the death of the testator; that the testator could not speak of his children in terms of affection without exciting her displeasure; that for years she endeavored to make him believe that he owed them no duty, and that they cared for him only because of his money; that he made the will because of her repeated solicitations and to obtain peace and cessation

of her constant importunities; that she declared that the children should not have anything, and that she would "fix them" by compelling the testator to put everything in her name and to make a will leaving everything to her; and that in many things he was influenced, controlled, and willed by her. Among other things it was shown that about five months after his first wife's death the second wife, before her marriage with the testator, while being entertained at his home, one morning appeared at breakfast wearing some of the clothes of the first wife. The daughters of the testator remonstrated with her and him, and informed them that it made them feel very unhappy to see another woman wear their mother's clothes. The remonstrance was unavailing, and, when the second wife departed, she took some of the clothes of the first wife with her. This circumstance was given in evidence as tending to show the influence the second wife had over the testator. It is claimed to be too remote. Standing by itself it, of course, is of little consequence; and, in the absence of a showing of the second wife's continued influence over the testator, would have been so remote as to have little or no probative value. But, when it is considered in connection with all the other facts and circumstances in evidence, and especially with the evidence tending to show a continued influence exercised by her over the testator, we are of the opinion that its admission in evidence was not error.

Witnesses testified as to the testator's "feelings" toward his children; that the second wife "hated" them; that "nothing she could say was bad enough"; that she took every opportunity "to malign his family"; that "a look or a word from her would stop him in the middle of a conversation, and he was in constant fear lest he would say something that might offend her"; that "he was constantly under her influence and control inasmuch as he did not dare to express an opinion about his children in her presence"; that "he was cowed down by her," and that "she showed him no consideration whatever"; and that at times she was "bitter," "agitated," and in "a state

of suppressed excitement." It is contended that, by these statements, the witnesses were permitted to give their opinions and conclusions. It is generally recognized that opinions or conclusions of ordinary witnesses derived from common experience and observation of things which persons generally are capable of comprehending and understanding are admissible in evidence when the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time, or where it is not practicable to lay before the jury the primary or constituent facts, so that they can draw the proper inferences and form an intelligent judgment. (Elliott, Ev., secs. 671-673.) In the main the statements complained of related to such matters, and were properly admitted. (5 Ency. Ev., p. 702; 17 Cyc., pp. 91, 150.) Of course, the witness before expressing his opinion or conclusion ought to show his acquaintance with the subject-matter and his opportunities for observation, and generally ought to be required to state such constituent facts as he is able to detail. It, however, is not contended that such a showing was not made. For the same reason, the court did not err in refusing to strike the answers of witnesses that the testator "always manifested the greatest affection for his children," and that his demeanor toward them was "affectionate." Nor did the court err in refusing to strike the evidence of the testator's declarations to the effect that, if he and his children were to live in peace and avoid trouble, they would have to do just as his wife said, and that he requested his children to do anything his wife asked so that he could have peace, and that, "after a scene with her, he always suffered from nervous attacks." These and other similar declarations of the testator tended to show his state of mind.

The court did not commit prejudicial error in refusing to strike the answer of a witness, a granddaughter of the testator, that "he was afraid of her (his wife) and dared

not reply although goaded beyond endurance by her continual attacks on him, and his family." The answer was made after the witness had testified somewhat in detail concerning her visits and associations with the testator and his wife, their demeanor and conduct toward each other, conversations had with the testator and his wife, and things said and done by them. Portions of the answer were in the nature of conclusions not within the rule heretofore stated, but, the jury having had the benefit of the facts upon which they were based, we do not think the court's refusal to strike the answer was prejudicial.

A witness in response to a question asked testified that the testator "always warned us in his letters never to mention anything that he said to us on that subject, as his wife would read the letters first, and, if they contained anything of that kind, would make it uncomfortable for him." It is claimed that by such statement the witness was permitted, without laying the foundation for secondary evidence, to orally give the contents of written documents. The claim is untenable for (1) the rule requiring the best evidence does not apply to collateral writings and independent facts; and (2) the witness did not state the contents of the letters, but only the subject-matter to which they referred. After the defendant rested, the plaintiffs called and asked a witness: "Did you ever observe Mrs. Miller's conduct towards Mr. Miller, especially at the table?" The court in overruling an objection interposed on the ground that the matter was not rebuttal observed that the defendant "would be given the right to rebut it if desired." The witness answered that at Christmas or New Year's dinners, when the hostess would say, "Brother Miller, do have another piece of this turkey or veal," Mrs. Miller would say to the hostess, "No, no; Tom Miller has had enough." And, when the hostess replied, "Sister Miller, let him have a little more," Mrs. Miller said, "Not at all; Tom Miller has had enough," etc., and thereupon caused his plate to be

removed from the table. Conceding that the matter was not rebuttal, it nevertheless was admissible in the discretion of the court, if material and relevant to the issue.

Complaint is also made because of the court's refusal to charge the jury as requested by the defendants as follows:

"The court instructs the jury that any degree of influence over another acquired by kindness and affection can never constitute undue influence within the meaning of the law, and, although the jury may believe from the evidence that the deceased in making his will was influenced by Margaret Miller, still, if the jury further believe from the evidence that the influence which was exercised was only such as was made over the deceased by kindness and friendly attentions to him, then such influence cannot be regarded in law as undue influence. . . . Affection or attachment, or mere desire to gratify the wishes of another, do not destroy the validity of a will made through such impulses. . . . In this case, though you may believe from the evidence that Margaret Miller did use arguments or importunities to influence Thomas Miller in making of the will in question, still this fact, if it exists, will in no manner affect the validity of the will if the jury further believe from the evidence that such arguments and importunities did not deprive the deceased of his free agency or prevent him from doing as he pleased with his property, even though the will might not have been made in all of its provisions as it is but for such argument and persuasion."

The substance of these requests was given by the court. Among other things, the court charged the jury that the burden was upon the plaintiffs to show that the execution of the will was procured by undue influence of his wife, Margaret Miller; that "undue influence is that degree of importunity which deprives a testator of his free agency, so that the instrument executed under its operation is not his free and unconstrained act, or, to state it in other language, undue influence is any improper or wrongful constraint, urgency, or persuasion whereby the will of a person is overcome, and he is induced to do an act which he would not do if left to act freely;" that, to constitute undue influence, the influence must "destroy free agency so that the will in question was the result of the domination of the mind of

another, rather than the expression of the will and mind of the testator." The court further charged the jury:

"It is not every influence exercised over a testator which the law regards as invalidating a will. Such influence to be what is regarded in law as undue or illegal must be such as to destroy or to substantially hinder in its exercise his free agency in the matter of making his will. It must be influence amounting to moral coercion, or importunity which could not be resisted, so that the testator was constrained to do that which was against his actual will, and which influence he was unable to withstand, or too weak to resist. What amounts to such influence in any particular case is to be judged by the facts and circumstances appearing in such case. This test applies to weighing the evidence in the case. . .     You are instructed that it is not wrongful for a person by honest advice and persuasion to influence one in the disposition of his property, or to induce a person to make a will in one's own favor by fair speech, argument, and kind conduct, if it does not amount to undue influence, as defined in these instructions. . . . Evidence has been introduced with respect to language and conduct of the deceased, both before and after making the will. This has been received for the purpose only to enable you to determine whether the decedent executed the will through undue influence or fraud. What the decedent's state of mind was before the occasion of executing the will or after its execution has nothing to do with its validity, except as it may afford evidence of his state of mind at the time of making it."

The court further charged the jury' that, if they found that the will was made in the absence of undue influence and fraud, any feeling Mrs. Margaret Miller had toward the children of the deceased or toward the deceased himself would not invalidate the will. The court also charged the jury that they had nothing to do with the equity or inequity of the disposition of the decedent's property, and that the right to dispose of one's property by will is an incident of ownership, and does not depend upon its judicious use; that the testator's children had no right in his estate which could be asserted against the disposition of his property by will; that a parent has the right to judge who is the proper object of his bounty; and that he may dispose of his property to any person

whomsoever so long as he was not coerced nor constrained by undue influence as theretofore defined.

We think most of the rulings complained of were right, and that none were prejudicial to appellants. The judgment is therefore affirmed, with costs.

FRICK and McCARTY, JJ., concur.