## GRIEVE v. HOWARD.

No. 3279.   Decided March 28, 1919.   (180 Pac. 423.)

1. APPEAL AND ERROR—EXCLUDING ANSWER—REVIEW. Where defendant's objection to question was based solely on the ground that the statute prohibited witness from testifying to matter inquired about, the contention that questions did not indicate answers expected, and that plaintiff should have stated what he expected to prove in order that court might determine whether answers would be material and their exclusion prejudicial, cannot be sustained. (Page 230.)

2. WITNESSES—PRIVILEGED COMMUNICATIONS—WAIVER BY REPRESENTATIVE. The personal representative of a deceased person may waive the privilege conferred by Comp. Laws 1917, section 7124, subd. 4, providing that physician or surgeon cannot be examined "without the consent of his patient" as to, etc. (Page 230.)

3. STATUTES—ADOPTION FROM ANOTHER STATE—CONSTRUCTION. The construction of a statute in the state from which it is adopted, subsequent to adoption, is no more binding, so far as the rule of construction is concerned, than the decision of a court from any other state. (Page 240.)

4. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—ADMISSIBILITY AS AGAINST GRANTEE. In action by administrator to set aside deed of his intestate, defendant, defending as grantee and not as heir, could not object to plaintiff's testi-

mony on the ground that it was prohibited by Comp. Laws 1917, section 7123, subd., 3, as to testimony equally within knowledge of witness and deceased, such statute being inapplicable, in view of the relation of the parties.* (Page 241.)

5. APPEAL AND ERROR—MOOT QUESTIONS. Respondent's contention that position taken by appellant in the trial court and that assumed by him in the court on appeal are inconsistent, that appellant in effect invited the ruling of the trial court of which he now complains, is a moot question, and need not be determined, in view of the fact that a new trial must be granted. (Page 242.)

6. DEEDS—ACTION TO SET ASIDE—MENTAL INCAPACITY AND UNDUE INFLUENCE—EVIDENCE ADMISSIBLE. Where mental incompetency and susceptibility to influence by others constitute the principal issue, letters and documents as well as other matters, tending to show the intelligence, judgment, mental force, and capacity of the party charged with mental deficiency, are material to establish the truth or falsity of the charge. (Page 243.)

7. APPEAL AND ERROR—ASSIGNMENTS NOT ARGUED—REVIEW. Assignments of error not argued will not be considered. (Page 243.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. P. C. Evans,* Judge.

Action by Simon Grieve, special administrator of the estate of Helen R. A. Grieve, deceased, against Mark A. Howard.

Judgment dismissing complaint. Plaintiff appeals.

REVERSED and new trial granted.

*Hurd & Hurd* of Salt Lake City, for appellant.

*J. W. Ensign* and *R. A. McBroom* both of Salt Lake City, for respondent.

APPELLANT'S POINTS.

The Court erred in sustaining the objections of defendant's

---

* *Miller* v. *Livingstone,* 31 Utah, 435, 88 Pac. 338.

counsel to the testimony of Simon Grieve as to conversations had with the deceased; or as to matters equally within the knowledge of the witness and said deceased. *Miller* v. *Livingston*, 31 Utah, 415.

The rule is well settled that a witness cannot be permitted to give an opinion upon the facts in issue. *Swan* v. *Railroad Company*, 41 Utah, 518.

### RESPONDENT'S POINTS.

If one party to the original transaction is precluded from testifying by death, insanity or other mental disability, the other party is not entitled to the undue advantage of giving his own uncontradicted and unexplained account of the transaction. *R. G. W. Ry. Co.* v. *Utah Nursery Co.*, 25 Utah, 192.

THURMAN, J.

Plaintiff, as special administrator of the estate of Helen R. A. Grieve, deceased, brought this action to set aside a deed made by his intestate to the defendant. It is alleged in the complaint that deceased at the time of the execution of the deed, February 18, 1916, was eighty-one years of age, feeble in mind and body, had been for many years subject to epileptic fits, and at the time mentioned was nervous, weak, sick, childish, and not of disposing mind, and was unduly influenced and prejudiced against her two sons, plaintiff and John R. Grieve, and also her grandson Frank Howard; that said deed was procured by fraud, circumvention, and undue influence practiced upon deceased by defendant, or some one in his behalf, and that there was no consideration for the deed.

Defendant, by his answer, admitted the execution of the deed and formal matters, but denied the remaining allegations of the complaint.

The case was tried to the court. A jury was impaneled as advisory to the court, and special issues submitted for their consideration relating to the physical and mental condition of

the deceased and the question of undue influence used in procuring the deed. The jury found the issues for the defendant. The court adopted the findings, made conclusions of law thereon, and entered judgment dismissing the complaint. Plaintiff appeals, and assigns as error the exclusion of certain testimony, the admission of nonexpert evidence, and letters and documents irrelevant and immaterial.

Plaintiff called as a witness Dr. J. N. Harrison, who qualified as a medical expert, and also testified he had known the deceased, Helen R. A. Grieve, for seventeen or eighteen years, and during all of said time had been her physician; that her physical condition had not been good; that her mental condition varied; that she had her peculiarities during all of the time he had known her; that if the subject was religion she spoke with a great deal of feeling; that she had her peculiar ideas of life, and also upon other subjects, especially astrology. After testifying generally as to her feebleness of mind, advanced age, and physical condition down to the time of her death, the following questions were propounded by appellant, all of which were objected to by respondent:

"(1)   Probably you didn't understand my question, Doctor.   Now, I will say this, Do you know her mental condition?   Or what was her mental state, say, from October, 1915, up to and including February, 1916?

"(2)   What peculiarities did you notice, Doctor, with reference to Mrs. Grieve, prior to, for a year prior to, February 18, 1916?

"(3)   Doctor, the ailment of Mrs. Helen R. A. Grieve that you have described, what effect did that have upon her physical condition?

"(4)   Did the deceased talk to you rationally or irrationally concerning astrology or any other subjects during the period of one year previous to February, 1916?

"(5)   Did you observe, Doctor, in your treatments and visits to Mrs. Grieve, any symptoms of melancholia?

"(6)   Doctor, you may state whether or not in your judgment the deceased was in such an enfeebled condition of body and mind on or about the 18th day of February, 1916, and for a couple of months prior to that time, that she might have been unduly influenced, wrongfully prejudiced, by the assertions of persons having exclusive control over her, to such an extent that she would erroneously act contrary to her own judgment, and be materially inclined to do things that she would not do if left to her own

free will, and to disown her children, and deeding her property to a third party, on the suggestions of persons to be benefited thereby, and leaving her children out of the situation?

"(7)   Now, Doctor, in your visits to Mrs. Grieve did you observe anything that would indicate childishness?

"(8)   Doctor, a person of Mrs. Grieve's physical condition and of her age, are they susceptible to influences of people that may be closely associated with them and of stronger and freer nature than she was?

The specific objection to each question was that the answer would reveal matters which the witness had learned in the course of his treatment of the deceased, and that the deceased was privileged against the revelation of such matters, and the doctor could not waive the privilege. The objections made invoked the statute (Comp. Laws Utah 1907, section 3414, subd. 4 [Comp. Laws 1917, section 7124]), which, as far as material here, reads as follows:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate. Therefore a person cannot be examined as a witness in the following cases:   *   *   *

"(4)   A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

The objections were sustained. This, in our judgment, is by far the most important exception presented for our consideration on this appeal, not only because of its inherent importance as a question of practice, but because of the conflicting views of the parties litigant as to the meaning and effect of previous decisions of this court relating to this and other questions somewhat analogous. But before considering the question upon its merits it is necessary to dispose of one or two technical objections against considering the question at all.

Respondent contends that in any event the rulings of the court sustaining the objections were not prejudicial, for the reason that the witness had already testified concerning the same matters, and the answers to the questions objected to would only have been a reiteration of testimony already admitted. If the record fully sustained this contention the po-

sition of respondent would be incontrovertible and the authorities cited would be in point; but, as we read the testimony, the contention is not justified, and therefore cannot prevail. It is pertinent to remark, however, that if questions 1, 2, and 3 had been the only questions propounded respondent's point would present a more serious question; for, as shown by the brief substance of the testimony heretofore stated, the doctor had been permitted to testify generally as to the mental condition of the deceased for the last two or three years next prior to her death, none of which testimony, however, went to the question of her incompetency to transact business or her susceptibility to influence exerted by others. These were the vital issues presented by the pleadings, and all of the questions propounded were material to the issues, and, except as to the first three questions above referred to, they had not been covered by the previous testimony of the witness.

Respondent urges the further objection that the questions objected to did not indicate the answers expected, and that appellant should have stated what he expected to prove, in order that the court might determine whether or not the answers would be material and their exclusion prejudicial. Respondent's contention in this regard would have considerable merit were it not for the particular grounds upon which he based his objection. He based it solely upon the ground that the statute prohibited the witness from testifying to the matter inquired of. It is manifest that any statement by appellant as to what he expected to prove would not have obviated the particular objection made.

For the foregoing reasons we deem it our duty to consider this assignment of error upon its merits. In order to avoid confusion, and perhaps an erroneous conception of the real question to be decided, the writer deems it pertinent to state the exact question as he understands it: Can the personal representative of a deceased person, under the statute above quoted, waive the privilege conferred by the statute, and demand that the physician who attended the deceased prior to his death be permitted to testify concerning

information acquired necessary to enable him to prescribe or act for the patient? The authorities are uniform, under all the statutes with which we are familiar, that the patient himself can waive or withhold the privilege where the question arises during his life. But the question here is, can his personal representative, after the death of the patient, waive the privilege the same as deceased could have done if living? Our statute, and most other statutes, are not express upon this particular point, and for that reason there is considerable conflict of authority, not so much among text-writers as among adjudicated cases.

Counsel for respondent, in challenging the validity of the questions propounded by appellant, relies for authority upon a former decision of this court in *Re Estate of Van Alstine*, 26 Utah, 193, 72 Pac. 942, and it may as well be admitted now as later on that, if the opinion in that case is a correct statement of the law and the doctrine therein enunciated is sound then appellant has no standing in this court as far as this particular question is concerned. So that, as before suggested, the question is one of the most vital importance to litigants, members of the bar, and courts of the state.

Appellant contends that the *Van Alstine Case* is not regarded as authority even by this court, and in support of his contention cites the opinion of the court in a later case. *In re Young's Estate*, 33 Utah, 382, 94 Pac. 731, 17 L. R. A. (N. S.) 108, 126 Am. St. Rep. 843, 14 Ann. Cas. 596. These conflicting views, expressed, as we believe, in the utmost good faith by counsel, further emphasize the importance of the question to be determined A brief review, therefore, of these and one or two other decisions of this court is imperatively necessary to a thorough understanding of the contention. The *Van Alstine Case* and the present case, as far as the question before us is concerned, are on all fours. In that case the contestant sought to prevent the probate of a will; in this case plaintiff seeks to set aside a deed. The grounds relied on in each case are the same—mental incapacity and undue influence. In the *Van Alstine Case* the attending physician was prohibited from testifying for exactly the same reason

and upon the same grounds that the physician was prohibited from testifying in the case at bar. This court in the *Van Alstine Case* sustained the ruling of the trial court excluding the testimony. The opinion of the court relating to this particular question is exceedingly brief. There is no discussion; the opinion merely quotes an excerpt from a former opinion of the court in another case in which the same question was not involved. *Munz v. Salt Lake City Ry. Co.*, 25 Utah, 221, 70 Pac. 852. The excerpt quoted from the *Munz Case* is found at page 225 of 25 Utah, at page 853 of 70 Pac., and including the authorities, reads as follows:

" * * * The statute in question, being remedial, should receive a liberal interpretation, and not be restricted by any technical rule. When it speaks of information, it means not only communications received from the lips of the patient, but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observation of his appearance and symptoms. 3 Jones, Ev. section 777; *Renihan v. Dennin*, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770; *Railroad Co. v. Mushrush*, 11 Ind. App. 192, 37 N. E. 954, 38 N. E. 871; *Keist v. Railroad Co.* [110 Iowa, 32], 81 N. W. 181; *Weitz v. Railway Co.*, 53 Mo. App. 39; *Iron Co. v. Cummings* [8 Colo. App. 541], 46 Pac. 875; *Raymond v. Railway Co.*, 65 Iowa, 152, 21 N. W. 495; *Grffiths v. Railroads Co.* (Sup.) [63 App. Div. 86], 71 N. Y. Supp. 406."

Notwithstanding the court in the *Van Alstine Case* copied literally the excerpt above quoted from the *Munz Case* without comment or discussion, and let the opinion go at that, it is a significant fact that the questions presented were entirely different, and the decision in the one case could shed no possible light on the other. In the *Munz Case* there was no question of waiver by a personal representative. It was a personal injury case, in which the injured party herself brought suit for damages. At the trial the defendant offered as a witness the physician who attended her concerning her injuries, and he was asked by defendant to state what he saw and what was said and done. Plaintiff objected, claiming that the question, under the statute, was privileged. The objection was sustained. On appeal this court sustained the ruling of the court below. The decision of the court in the

*Munz Case* is in accord with the law as promulgated in practically every jurisdiction in the United States; while the opinion in the *Van Alstine Case* is, in our judgment, contrary to the great weight of judicial opinion. This feature, however, will be further considered after we have given a brief consideration to the other Utah case to which reference has been made.

In the *Young Estate Case* the question arose in the contest of a will, in which the grounds of contest were substantially the same as in the *Van Alstine Case*. The particular question, however, arose upon the refusal of the attorney who prepared the will to answer certain questions as to what was said and done by him, the deceased and the proponent of the will, during its preparation. The trial court did not compel the witness to answer the question, and the failure of the court so to do was assigned as error. This court—opinion by Mr. Justice Frick—sustained the assignment of error and reversed the judgment. Subdivision 2 of the statute above mentioned forbids an attorney, without the consent of his client, from testifying to communications made to him by his client or any advice given by him to such client. While the question presented was not exactly the same as the question in this or the *Van Alstine Case*, yet it was sufficiently analogous to justify reference to cases of this kind. The opinion referred to the fact that the court in deciding the *Van Alstine Case* did not discuss the real question involved, and that most of the authorities cited relate to a question entirely different. The opinion does not expressly overrule the *Van Alstine Case*, nor does it go so far as to hold that the question in the two cases is identical. It is plain to be seen, however, that the opinion in the *Van Alstine Case* is seriously discredited as an authority on the question which it purports to decide. So that, while respondent relies on the *Van Alstine Case* as authority in the case at bar, and on appeal appellant rejects it as a binding precedent, the court is under the necessity of determining now, once for all, what the law is in respect to the question presented.

This brings us to a consideration of the question in the light

of authority as we find it in other jurisdictions of the country.

Respondent contends that the privilege conferred by the statute belongs to the patient alone; that it is a personal one, and cannot be waived by any one representing him after his decease. It must be admitted that, where the words of a statute are plain, unambiguous, and unequivocal, before anything can be added by way of intendment the reason for so doing should be strong, cogent, and convincing. It is upon this ground that the authorities relied on by respondent place upon statutes similar to ours a strict and narrow construction rather than a broad and liberal one.

The statute under consideration was adopted literally from the California Code of Civil Procedure as early as 1884. Session Laws Utah 1884, p. 359. California adopted its statute from the New York Code. Our attention has not been called to any case decided by the California court prior to the adoption of our statute, which construes the statute of that state in respect to the right of the personal represenative of a deceased person to waive the privilege in question. The case of *In re Flint*, 100 Cal. 391, 34 Pac. 863, decided in 1893, relied on by respondent, is squarely in point to the effect that the privilege is personal to the patient, and after the death of the patient cannot be waived by his personal representative. The protestant of the will in that case was permitted, over the objection of proponent, to prove by the attending physician that during his visitation he prescribed for him for mental trouble. The grounds of contest were the same as here. The opinion refers to the New York statute, and assumes that it is practically the same as that of California, and then cites the following cases from the New York reports: *Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56, 1 N. E. 104, 52 Am. Rep. 1; *Renihan* v. *Dennin*, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770; *Loder* v. *Whelpley*, 111 N. Y. 239, 18 N. E. 874. These cases unqualifiedly sustain the opinion in the *Flint Case*, the court in each state basing its decision upon the ground that under the terms of the statute the privilege is personal, and cannot be waived except by the patient while living.

The opinion in the *Flint Case,* however, goes further, and admits that the contrary doctrine is maintained by the courts of Missouri, Michigan, and Indiana, and cites the following cases: *Morris* v. *Morris,* 119 Ind. 341, 21 N. E. 918; *Groll* v. *Tower,* 85 Mo. 249, 55 Am. Rep. 358; *Thompson* v. *Ish,* 99 Mo. 160, 12 S. W. 510, 17 Am. St. Rep. 552; *Fraser* v. *Jennison,* 42 Mich. 206, 3 N. W. 882. These cases support the contention of appellant in the case at bar that the privilege of a patient, in case of his death, may be waived by his personal representative; but it is stated by the court in the *Flint Case* that the statutes of the states last named vary materially from the statutes of New York and California, and there is a veiled suggestion, at least, that the difference in statutes accounts for the difference of opinion. This, if true, is an important suggestion, the consideration of which cannot be omitted in attempting to arrive at a correct conclusion. The statute of Missouri, under which the case of *Groll* v. *Tower,* supra, was decided, as far as the privilege pertaining to physicians is concerned, reads as follows:

"The following persons shall be incompetent to testify:  *  *  *

"Fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

A comparison between the language of this statute and that of the Utah statute indicates but little difference, except that the Missouri statute appears to be more restrictive, less liberal, in that it does not expressly provide that even the patient may consent to the testimony or otherwise waive the privilege. Notwithstanding this distinction, the Missouri court held that the representative of the deceased patient could waive the privilege and require the attending physician to testify to matters relating to the injury and death of the patient. To the same effect is the other Missouri case cited, *Thompson* v. *Ish.*

In *Morris* v. *Morris,* supra, the Indiana case, decided in 1889, the same doctrine is announced. It is held that the attending physician is incompetent as a witness as to informa-

tion acquired while attending the patient, except with the consent of the patient or his representative after the patient's death. The Indiana statute is not stated in the opinion of the court; but in *Penn Mutual Life Ins. Co.* v. *Wiler,* 100 Ind. at page 99, 50 Am. Rep. 769, the statute relating to physicians as witnesses reads:

"The following persons shall not be competent as witnesses: * * *

"Physicians, as to matters communicated to them, as such, by patients in the course of their professional business, or advice given in such cases."

As suggested by us when commenting on the Missouri statute, the Indiana statute appears to be less liberal than the Utah statute in that it does not expressly provide for either waiver or consent by the patient. Nevertheless the court held that the widow of the deceased, in an action to enforce a policy insuring his life, bore such a relation to the case as to enable her to either give or withhold her consent to the testimony of the attending physician.

In the Michigan case cited in the *Flint Case* (*Fraser* v. *Jennison*), opinion by Cooley, J., the same doctrine is maintained. The Michigan statute is quoted in the opinion, and reads:

"No person duly authorized to practice physic or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

We indulge in the same comment concerning this statute as heretofore made concerning the statutes of Missouri and Indiana. It is apparently more restrictive than the Utah statute in respect to the matter of consent or waiver, for neither is expressly provided for. The court, however, holds that the privilege may be waived by the patient in his lifetime, and after his death by his personal representative. As the opinion, so far as this question is concerned, is exceedingly brief, and was written by one of the most distinguished jurists this country has produced, we quote in its entirety all that is said on this question after repeating the statute:

"This statute, as we have held, covers information acquired by

observation while the physician is in attendance upon his patient, as well as communications made by the patient to him (*Briggs* v. *Briggs*, 20 Mich. 34); but the rule it establishes is one of privilege for the protection of the patient, and he may waive it if he sees fit (*Scripps* v. *Foster*, 41 Mich. 742 [3 N. W. 216]); and what he may do in his lifetime those who represent him after his death may also do for the protection of the interests they claim under him."

After carefully considering the language of these statutes and the cases decided under them, referred to by the California court in the *Flint Case*, we confess our inability to understand upon what theory the California court or any other court can consistently hold that the differences existing in the statutes justify the differences found in the conflicting opinions referred to. It seems to us it would be far more ingenuous to admit that the statutes referred to, including our own statute, are all substantially the same in meaning and effect, and that the conflicting opinions of the courts are due entirely to conflicting views of different minds concerning the same subject.

In the opinion in the *Flint Case*, at page 395 of 100 Cal. at page 863 of 34 Pac., of the report, it is said, in support of its position: "The authorities are uniform upon this question in all those states possessing statutory enactments in any way similar to the one we have quoted." All of the statutes and cases we have reviewed were in existence when the *Flint Case* was decided. It follows that the views of the California court and the views herein expressed are diametrically opposed one to the other on the question as to what the courts hold under similar statutes. We submit the record; it speaks for itself.

The Supreme Court of Minnesota has recently decided the question here involved under a statute which reads as follows:

"A regular physician or surgeon cannot, without the consent of his patient, be examined, in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

This statute is in every respect almost identical with our own, and is absolutely identical in substance. In *Olson* v. *Court of Honor*, 100 Minn. 117, 110 N. W. 374, 8 L. R. A.

(N. S.) 521, 117 Am. St. Rep. 676, 10 Ann. Cas. 622, from which we have copied the above statute, the defendant was a mutual, fraternal benefit association, and suit was brought by the husband and his children upon a certificate of membership issued to his wife in her lifetime  The defense was that the deceased committed suicide, which took the case outside the benefits provided by the by-laws of the association, unless the suicide was committed while under treatment for insanity. The attending physician was sworn as a witness by plaintiff, and, over the objection of defendant, was permitted to testify that the deceased was under treatment by him for insanity. The appellate court sustained the ruling of the trial court permitting the witness to testify, on the grounds that the relation of the plaintiff to the case was such that he could waive the privilege.  The opinion on that point is strong and the reasons given exceedingly persuasive.  We quote the following pertinent paragraph from the opinion:

"Does this privilege become absolute on the death of the patient, or may those who represent him or claim an interest under him after death waive the privilege for the protection of such interest? This is an important question; for if they cannot waive the privilege given by the statute, and their adversary may invoke it to suppress the truth and defeat the enforcement of rights the deceased provided for them in his lifetime, then the statute may be made an instrument for cheating justice. If such be the proper construction of the statute, then, if an executor or legatee presents a will for probate, which is contested on the ground that the testator was of unsound mind when the will was made, the executor or legatee may not, if the contestant objects, call the physician who was attending the testator at the time to testify as to his knowledge of the patient's mental condition acquired in attending him. Nor could the personal representatives of a party, in an action to recover damages on account of the death of his intestate by the alleged negligence of the defendant, call the physician who attended the intestate after his injury to testify as to the nature of the injuries and the cause of death, if such information was acquired in attending him."

The following excerpts from text-writers cited by appellant are in accord with the doctrine announced in the above cases:

"As we have seen, statutes generally provide that the information shall not be disclosed without the consent of the patient. The privilege is for his protection, and, if he sees fit, he may waive it

either by express consent or by calling the physician to testify as to the privileged matter, or by failing to object to such testimony as incompetent under the statute. * * * By the weight of authority, however, it is held that, since the patient may waive the privilege for the purpose of protecting his rights, the same waiver may be made by those who represent him after his death, for the purpose of protecting rights acquired by him." 3 Jones, Ev. section 779.

"The personal representative of the deceased may waive the privilege. One who is intrusted with the management of the deceased's property may surely be trusted to protect the memory and reputation of the deceased, in so far as it is liable to injury by the disclosure of his physical condition when alive. It is incongruous to hold that the person who manages the litigation of the deceased's property interests has no power to waive the rules of evidence for the purpose of advancing those interests. The power of an heir may also be conceded if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation; and, secondly, has an equal moral claim to protect the deceased's property rights from unwarranted diminution. The futility, under the circumstances, of predicating any privilege is the more apparent when (as is the usual case) the issue turns upon the fact of insanity which is so bruited publicly in the litigation that the pretense of preserving secrecy is a vain one. Except in two or three jurisdictions, it is usually agreed that the deceased's representative (and probably also heir) may waive the privilege." Wigmore, Ev. vol. 4, section 2391.

" * * * But the mere presence of a physician does not make communications which are not addressed to him, or connected with his professional duties, inadmissible. The death of the patient does not remove the prohibition. And in case of death the assignee or personal representative of the patient may claim the privilege." 1 Elliott, Ev. section 634.

Other statutes and authorities could be cited and comparisons made, all of which would tend to strengthen the conclusions to which the cases cited inevitably lead; but we deem it unnecessary to extend our remarks further upon this particular question, and we claim justification for saying as much as we have said solely for the reason that the apparent conflict in the former decisions of this court heretofore referred to renders it necessary to definitely determine the rule by which future cases shall be governed in this jurisdiction.

Appellant also cites the following cases to the same effect: *Masonic Mut. Ben. Ass'n* v. *Beck*, 77 Ind. 203, 40 Am. Rep.

295; *Gurley* v. *Park*, 135 Ind. 440, 35 N. E. 279; *In re Parker*, 78 Neb. 535, 111 N. W. 119; *Shuman* v. *Supreme Lodge, etc.,* 110 Iowa, 480, 81 N. W. 717; *Sovereign Camp, etc.,* v. *Grandon*, 64 Neb. 39, 89 N. W. 448; *Denning* v. *Butcher*, 91 Iowa, 425, 59 N. W. 69; note to 10 A. & E. Ann. Cas. 1118; *Long* v. *Garey Inv. Co.* (Iowa) 110 N. W. 26; *Fish* v. *Poorman*, 85 Kan. 237, 116 Pac. 898; *Studabaker* v. *Faylor*, 52 Ind. App. 171, 98 N. E. 318.

On the question of waiver by the representative of a deceased patient respondent furnishes us with no authority exceptthe *Van Alstine Case* by this court, and the *Flint Case* by the California court, and the cases therein referred to.

If the California court had construed the statute of that state prior to our adopting it, as is contended by respondent, under a well-known rule of construction we would probably feel constrained to follow such decision, even though it might not in the fullest sense express our views; but we have not been able to find any such decision by that court. The decision in the *Flint Case,* therefore, at most, is only persuasive, and is not more binding as authority, so far as the rule of construction is concerned, than is the decision of a court from any other state.

In view of the state of the law as we find it, and our own convictions of what is most reasonable and just, we are of the opinion that under our statute the personal representative of a deceased person has the same right to waive the privilege given by the statute, after the death of the patient, as the patient would have had if living. Some of the cases above cited go still further, and hold that even the heirs or devisees of the deceased may waive the privilege, especially where there is no personal representative.

We are not unmindful of the fact that in many of the cases referred to the reason is given that such a rule is necessary in order to uphold the will or other act of the deceased. Viewed from that standpoint, it would seem that plaintiff does not fall within the rule for the reason that he is seeking by this action to set aside the deed executed by the deceased instead of trying to uphold it. But it must also be borne in mind

that whether or not the execution of the deed in question was an intelligent, conscious, voluntary act of the deceased was the very question to be determined, and therefore to assume that plaintiff is taking a position adverse to the deceased, or to those rightfully claiming under her, is to assume as true a seriously controverted fact. We feel compelled, therefore, to hold that the plaintiff, as the personal representative of the deceased, charged with the duty of protecting her estate, had the right to waive the privilege granted by the statute, and that the attending physician, under the circumstances of this case, was a competent witness, and would have been permitted to answer the questions.

It follows as a corollary from the conclusion reached that the doctrine enunciated in the *Van Alstyne Case* is wrong, and that the decision for that reason should be and is hereby overruled.

It is further contended by appellant that the trial court erred in sustaining objections of respondent to certain questions asked appellant. Appellant, while testifying       4 to matters relating to deceased's physical and mental condition, was asked by his counsel, "Was she complaining about any illness at that time, up to the time of your father's death?" Respondent objected on the grounds that the matter inquired of was within the statute (Comp. Laws 1907, section 3413, subdiv. 3 [Comp. Laws 1917, section 7123]), which reads as follows:

"The following persons cannot be witnesses:  *  *  *

"3. A party to any civil action, suit, or proceeding, and any person directly interested in the event thereof, and any person from, through, or under whom such party or interested person derives his interest or title or any part thereof, when the adverse party in such action, suit or proceeding claims or opposes, sues or defends as guardian of any insane or incompetent person, or as the executor or administrator, heir, legatee, or devisee of any deceased person, or as guardian, or assignee, or grantee, directly or remotely, of such heir, legatee, or devisee, as to any statement by, or transaction with, such deceased, insane, or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both the witness and such insane, incompetent, or deceased person, unless such witness be called to

testify thereto by such adverse party, so claiming or opposing, suing or defending in such action, suit, or proceeding."

As the defendant, Mark Howard, was not opposing or defending as guardian, executor, administrator, heir, legatee, or devisee of the deceased, or as guardian, assignee, or grantee of such heir, legatee, or devisee, we cannot understand how the testimony of appellant was prohibited, even if it *was* concerning a fact equally within the knowledge of the witness and the deceased. A reasonably careful analysis of this statute will conclusively demonstrate that, in view of the relation and character of the parties, the matter was not within the statute. As we understand the situation, defendant was defending not as an heir of the deceased, but as a grantee under the deed executed by her. The relation was not such as to entitle him to object to the testimony on the grounds that it was prohibited by the statute. *Miller* v. *Livingstone*, 31 Utah at page 435, 88 Pac. 338; 40 Cyc. 2270 to 2275, inclusive. If the testimony was material, the court erred in excluding it and the plaintiff was prejudiced thereby.

But it is contended by respondent, in connection with this question, that the position taken by appellant in the trial court and that assumed by him in this court are inconsistent; that appellant, in effect, invited the ruling of the trial court of which he now complains. In view of the fact that a new trial must be granted, this point urged by respondent becomes a moot question and need not be determined.

Appellant also assigns as error the ruling of the court sustaining respondent's objections to certain questions propounded to plaintiff's witness Mrs. Simon Grieve. The objection made in each case, in effect was that the question was too general, or that it called for a conclusion of the witness without stating the facts upon which the conclusion was based. Under the circumstances, it is not necessary to state the questions and objections in detail nor to determine the concrete question presented. The rule is stated in *Re Hansen's Will*, a recent decision by this court, 50 Utah, 207, 167 Pac. at page 261. See, also, *Miller* v. *Livingston*, 36 Utah,

233, 102 Pac. 996. The same rule applies to the exceptions of plaintiff to the nonexpert opinion evidence of certain witnesses on behalf of respondent.

Finally, appellant complains that numerous letters and documents, irrelevant and immaterial, reflecting upon his character and reputation, were admitted, over his objection, for the purpose of prejudicing the minds of the court and jury against him. It is needless to say that irrelevant and immaterial evidence should not be introduced into a case at all against the objection of the opposing party, and especially if admitted for the purpose stated by appellant. But it is proper to remark that in a case of this kind, where mental incompetency and susceptibility to influence by others constitute the principal issue, letters and documents as well as other matters tending to show the intelligence, judgment, mental force, and capacity of the party charged with mental deficiency are not only material, but may be the most satisfactory evidence available to establish the truth or falsity of the charge. In the present case it is contended by respondent that appellant himself invited the character of testimony of which complaint is made. If such is true, appellant has no just reason to complain. We need not decide the question, however, for if respondent's contention is true, appellant is not likely to repeat the blunder upon a new trial of the case.

There are numerous other assignments of error, but, as they were not argued, they will not be considered.

The judgment is reversed, and a new trial granted at respondent's cost.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.