(No. 4903.   August 4, 1928.)

ALEX  SPROUSE,  JOYCE  WILLIAM  SPROUSE,  a
Minor, MARJORIE MAE SPROUSE, a Minor, and
ALEX  SPROUSE,  Guardian  *ad Litem*  of  JOYCE
WILLIAM   SPROUSE   and   MARJORIE   MAE
SPROUSE, Minors, Appellants, v. C. F. MAGEE,
Respondent.

[269 Pac. 993.]

Frank L. Moore and Latham D. Moore, for Appellants.

A. H. Oversmith, for Respondent.

TAYLOR, J.—The complaint alleges this action brought by Alex Sprouse on his own behalf and as guardian *ad litem* of his two minor children, to recover damages for alleged malpractice by the defendant, a doctor, resulting in the death of the wife and mother of the respective plaintiffs.

The complaint alleged malpractice in a first negligent and incorrect diagnosis and treatment about February 25, 1925,

and subsequent erroneous and negligent diagnosis, and an operation pursuant to such mistaken diagnosis, and carelessness therein, resulting in infection from which the patient died, alleging that with reasonable and ordinary care and skill the defendant could have readily diagnosed deceased's ailment correctly, and performed the necessary operation therefor, and that the patient would not, if so treated, have died.

Defendant pleaded two separate defenses of contributory negligence by the plaintiff father: One, that in November, 1924, prior to the first diagnosis and treatment complained of, the mother had been under the care of defendant, and that the plaintiff father had been advised by him that any subsequent pregnancy of the mother, within a considerable period of time, would be extremely dangerous, and that pregnancy was caused by the negligence of the plaintiff father, and that this brought about the "ruptured extra uterine pregnancy" for which she was later treated; second, that after the diagnosis of February 25, 1925, the patient was permitted to leave the hospital upon March 2, 1925; that plaintiff had negligently failed to notify defendant immediately upon a marked change in the condition of deceased, and that such negligence contributed to her death. The appeal is from an order denying motion for new trial.

Plaintiff did not demur to the allegations of contributory negligence, but assigns as error instructions given by the court thereon, which present here the sufficiency of the allegations of contributory negligence as a defense. The first alleged contributory negligence should not have been submitted to the jury, and the instructions thereon were erroneous in so doing. The negligence, if any, in contributing to the pregnancy of deceased could in no way be a contributing cause to the damage from negligence in the treatment of the effect thereof, which is the matter complained of.

Plaintiffs contend that the second alleged ground of contributory negligence did not state a defense, and that the instructions giving it such effect were erroneous as to

all the plaintiffs, and in any event erroneous as to the children, in imputing negligence of the father to them. Plaintiffs were complaining of erroneous and negligent diagnosis and treatment prior to the time of this alleged contributory negligence, and as such it might have constituted contributory negligence. The precision of such instruction does not necessarily depend upon imputing negligence to the children, but upon the nature of the cause of action, and what if any negligence of a husband under the circumstances will be imputed to the wife.

Under Lord Campbell's Act, the original model for all statutes giving a cause of action for so-called death by wrongful act, the act, neglect or default must have been such as would have entitled the party injured to maintain an action therefor if death had not ensued. (Tiffany on Death by Wrongful Act, 2d ed., sec. 61.) While this limitation or condition upon the maintenance of the action, is not included in the Idaho act, as said by that author, no case has been found in which it has not been implied. (Id., secs., 63, 66.)

In construing the Idaho act, the supreme court of the United States, in *Northern Pacific Ry. Co. v. Adams,* 192 U. S. 440, 24 Sup. Ct. 408, 48 L. ed. 513, said of parties plaintiff in such action:

"They claim under him, and they can recover only in case he could have recovered damages had he not been killed, but only injured."

If the wife had survived, the husband would have been a necessary party in any action for damages, and the damages community property (*Labonte v. Davidson,* 31 Ida. 644, 175 Pac. 588), and contributory negligence of the husband would have been a defense; hence, it may be pleaded as a defense here. (*McFadden v. Santa Ana, O. & T. St. Ry. Co.,* 87 Cal. 464, 25 Pac. 681, 11 L. R. A. 252; Tiffany on Death by Wrongful Act, 2d ed., sec. 67.)

Appellants complain of the rejection of evidence by physicians of information acquired by them in attending and treating the deceased, and evidence by these same physicians

as to facts developed by an autopsy. This evidence was excluded under C. S., sec. 7937, which provides:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . . .

"4. A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Appellants contend that they had a right to waive the privilege thereof, and cite in their support decisions permitting personal representatives and heirs to so waive the privilege of the deceased. If the cause were not being reversed for other error, respondent's contention that appellant should not be heard upon alleged error in rejection of this evidence in the absence of an offer to prove what the witness' response would have been, might be upheld. However, the fact that the evidence was rejected as a class, might obviate the necessity of such offer. (*Grieve v. Howard*, 54 Utah, 225, 180 Pac. 423.) In view of a new trial, we should declare the law applicable to the subject.

As stated in *Trull v. Modern Woodmen of America*, 12 Ida. 318, 10 Ann. Cas. 53, 85 Pac. 1081, there are two lines of decisions upon the survival of the right to waive this privilege. The courts of New York and California, prior to amendments of their statutes, and of Wisconsin, Mississippi and North Dakota, and of Utah until it reversed its position, have held that the privilege dies with the patient, and cannot thereafter be waived by anyone. These decisions have been based upon statutes little if any different from ours, or from those of most of the states in which the courts have taken the opposite position. (*Grieve v. Howard*, *supra.*) The courts of Arizona, Arkansas, Colorado, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska and Utah, and New York and California since statutory amendment, have taken the opposite view. The difference in statutes has not always seemed to furnish ground for the

diversity of opinion. Rather, the former have held that their statute is explicit, and calls for no interpretation, or that no other is possible. The latter have arrived at their conclusions upon various grounds. The weight of numbers is with the latter holding. It would serve no useful purpose to discuss these holdings in detail. They may be found commented upon in an extended note at 31 A. L. R. 167. Decisions in most of the latter states have extended the right to waive this privilege to heirs, devisees and legatees, and a number of them to beneficiaries under life insurance policies. Some courts have committed themselves without much or any discussion or studied interpretation of statutes, content with a mere declaration. (*Fish v. Poorman*, 85 Kan. 237, 116 Pac. 898; *Craig v. Craig*, 112 Kan. 472, 212 Pac. 72; *Parker v. Parker*, 78 Neb. 535, 111 N. W. 119.) Others have seemed to feel free to "adopt" either "rule" as seems to them most reasonable and best suited to attain justice in cases of this kind. (*Schornick v. Schornick*, 25 Ariz. 563, 31 A. L. R. 159, 220 Pac. 397.)

It seems that some of the courts which have discussed and given weight to the presence of a requirement of "consent" or "express consent," or the absence thereof, especially in the matter of privilege as to attorney and client, from analogy with which conclusions have often been arrived at as to the privilege as to physician and patient, have not given due weight or consideration to whether or not such statutes were simply a restatement of the common law, but have treated them as new matter.

The matter must be determined from an interpretation of our statute in the light of the common law at the time it was adopted. The privilege involved did not exist at common law. 5 Wigmore on Evidence, 2d ed., sec. 2380, traces the history of statutory enactments upon this subject to the early adoption thereof in New York in 1828, followed by similar enactments in other states. These were a concomitant of others abolishing most of the common-law disqualifications.

Our code provisions (C. S., secs. 7935–7937) upon this subject were adopted in 1881 (Code Civ. Proc. 1881, secs. 897–899), with the exception of C. S., sec. 9130, as to criminal matters, adopted as a new section in the Revised Statutes of 1887. The purpose of C. S., sec. 7935, was to remove all common-law disqualifications with the exception of those retained or newly incorporated in C. S., secs. 7936 and 7937.

New York, whose statute differs little in principle from ours, and California, so similar as to suggest the source of ours, had not construed their statutes at the time of our adoption thereof. The leading case in New York, of *Westover v. Aetna Life Ins. Co.,* 99 N. Y. 56, 52 Am. Rep. 1, 1 N. E. 104, was decided in 1885; and of the early decisions upon the other side, *Fraser v. Jennison,* 42 Mich. 206, 3 N. W. 882, was decided in 1879, and *Thompson v. Ish,* 99 Mo. 160, 17 Am. St. 552, 12 S. W. 510, in 1889. Many of the courts in later decisions have at some time cited these with varying reasons for varying results. In *Fraser v. Jennison, supra,* Justice Cooley said:

" . . . . The patient . . . . may waive it if he sees fit, . . . . and what he may do in his lifetime, those who represent him after his death may also do for the protection of the interests they claim under him."

This language has furnished the basis of more of the decisions than any other, and yet the Michigan court has frequently, prior to an ultimate amendment in 1909, cast doubt upon the language of Justice Cooley, in expressions perhaps *dicta* but nevertheless forcefully made. (See *Storrs v. Scougale,* 48 Mich. 387, 12 N. W. 502; *Maynard v. Vinton,* 59 Mich. 139, 60 Am. Rep. 276, 26 N. W. 401; *Derham v. Derham,* 125 Mich. 109, 83 N. W. 1005; *Oldenberg v. Leiberg,* 177 Mich. 150, 142 N. W. 1076.) Leading texts upon evidence seem to adopt the Michigan rule, and state cases to the contrary to be the exception.

We must construe these sections in view of the principle that changes in the common law by the adoption of a statute are not to be presumed, unless an intent appears

to accomplish that purpose. (25 R. C. L., p. 1054 et seq., secs. 280, 281.) Another rule of interpretation is that other portions of the same act or section may be resorted to as an aid to determine the sense in which a word, phrase or clause is used, and such word, phrase or clause repeatedly used in a statute will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is another meaning intended, such as a difference in subject matter which might raise a different presumption. (25 R. C. L., p. 995, sec. 238.)

Bearing in mind that at common law the privilege as to communications made by a client to an attorney could be waived by a personal representative of a deceased client, in matters in which he represented the client (5 Wigmore on Evidence, 2d ed., sec. 2329), it must be said that so far as interpreting subdivision 2 of C. S., sec. 7937, the use of the words "without the consent" of the client made no change in the common law, and that that subdivision is a mere restatement of the common law. It is reasonable to say that the legislature intended the common-law interpretation thereof.

The survival of the right of the patient to waive this privilege has become so generally recognized that texts lay it down as the general rule, and cite decisions to the contrary as the exception. 5 Wigmore on Evidence, 2d ed., sec. 2391, says:

"Except in two or three jurisdictions, it is usually agreed that the deceased's representative (and probably also the heir) may waive the privilege."

See, also, 5 Jones on Evidence, 2d ed., sec. 2198; 4 Nichols on Evidence, p. 3624, sec. 110; 40 Cyc. 2397; 28 R. C. L., p. 543, sec. 133; 23 Am. & Eng. Ency. of Law, 2d ed., p. 90.

The statutory privilege of physician and patient is inveighed against by Wigmore (sec. 2380). Many decisions upholding the right of waiver after death of the patient have reached their conclusion partly if not entirely upon the ground that such valuable evidence as is generally furnished by such disclosure, in some instances indispensable, could

not have been intended to be forever hidden, or that such was a needless or unjustifiable provision or interpretation, or that such a statute, tending to the suppression of the truth, should be strictly limited in its application. Even some courts holding that the right to waive the privilege dies with the patient have recognized the evil of such rule, but ascribed it to the legislature, and declared themselves powerless to relieve from it.

Applying the principles of interpretation we have recited, and giving to the weight of authority credit for the reasonableness to which, by very numbers, it is entitled, it seems but reasonable that the words "without consent" were used with no different meaning, calling for no different interpretation, when applied to a patient than when applied to a client, when such different interpretation, if applied, would reach an unreasonable conclusion as tested by such weight of authority.

We conclude that the right to waive the privilege, as to evidence of a physician, survives, and may be exercised after the death of the patient.

Although it has been necessary to decide that we have here parties who may waive such privilege, under the reasoning of those decisions permitting a waiver, before the necessity of deciding the right to so waive, the discussion thereof follows better the decision of the latter question, because it is in those authorities we find the kinds and character of parties and interests represented, to which the right has been denied or extended. In the adjudications, we find the right extended or denied in language characterizing the representative or interest represented, entitled to the right, such as follows: "By those who stand for him, . . . . those whose interest it is to maintain the integrity of the will, thus effectuating the wishes of its maker." (*Denning v. Butcher,* 91 Iowa, 425, 59 N. W. 69.) "The statutes are for the benefit of the patient while living and of his estate when dead." (*Winters v. Winters,* 102 Iowa, 53, 63 Am. St. 428, 71 N. W. 184.) "Those who represent him or claim an interest under him after death . . . .. for the protection

of such interest." (*Olson v. Court of Honor*, 100 Minn. 117, 117 Am. St. 676, 10 Ann. Cas. 622, 110 N. W. 374, 8 L. R. A., N. S., 521.) "Heirs . . . . to protect the property of their ancestor . . . . and to obtain their own rights under the statute of distributions," or "a legatee or an executor . . . . for the purpose of protecting the will and a legacy under it." (*In re Gray's Estate*, 88 Neb. 835, Ann. Cas. 1912B, 1037, 130 N. W. 746, 33 L. R. A., N. S., 319.) "Seeking to protect or conserve the interests of the estate." (*Scott v. Smith*, 171 Ind. 453, 85 N. E. 774. See, also, *Heaston v. Kreig*, 167 Ind. 101, 119 Am. St. 475, 77 N. E. 805.) "Those who represent him after his death, for the purpose of protecting rights acquired under him, . . . . claiming under the deceased." (*Thompson v. Ish, supra.*) "Claiming rights to the estate through devise, inheritance, or in a representative capacity." (*Shuman v. Supreme Lodge*, 110 Iowa, 480, 81 N. W. 717.) "What he may do in his lifetime, those who represent him after his death may also do for the protection of the interests they claim under him." (*Fraser v. Jennison, supra.*)

The supreme court of Minnesota, in *Olson v. Court of Honor, supra*, and *Mageau v. Great Northern Ry. Co.*, 103 Minn. 290, 14 Ann. Cas. 551, 115 N. W. 651, 15 L. R. A., N. S., 511, has, in *dicta arguendo*, recognized such a party as entitled to the right to waive the privilege.

In *Groll v. Tower*, 85 Mo. 249, 55 Am. Rep. 358, the court assumed without argument that a widow in such action was the representative of her deceased husband, and held she had the right to waive the privilege.

This cause of action did not exist at common law, nor did such action begun by the deceased survive. However, in most states both have been provided for by statute. They are, however, distinct causes of action, with different elements as measures of damage, some of which, however, overlap. A personal representative may maintain both. It has been held that he may bring them together. We find, thus, a duplication of the right to recover some of such elements of damage, although a recovery in either of such

actions would bar a recovery in the other as to some elements of damage as could be recovered in either. (*Hindmarsh v. Sulpho Saline Bath Co.*, 108 Neb. 168, 187 N. W. 806; *Mageau v. Great Northern Ry. Co., supra.*) In the surviving action, he would have the right to waive the privilege as such representative.

While it was said in *Whitley v. Spokane & Inland Ry. Co.*, 23 Ida. 642, 132 Pac. 121, s. c., 237 U. S. 487, 35 Sup. Ct. 655, 59 L. ed. 1060, L. R. A. 1915F, 736, the action by a representative on behalf of the heirs is not for the benefit of the estate, and the California holding in *Webster v. Norwegian Min. Co.*, 137 Cal. 399, 92 Am. St. 181, 70 Pac. 276, is the same, the courts were not there deciding the waiver question presented here. As said in *Northern Pacific Ry. Co. v. Adams, supra,* they "claim under" the deceased, and could not recover if he could not have done so, and their recovery is measured by the benefits which would have accrued to them had he lived. (*Serensen v. Northern Pacific R. Co.* (C. C.), 45 Fed. 407.) It would be illogical to so construe the statutes in joint actions by the representative, as to give him the right to waive in one and not in the other, or that the right of waiver which such representative had in an action on behalf of the heirs, could not be exercised by them if they brought the action themselves in their character as representatives of interests created in their behalf, which they can claim only by reason of claiming under the deceased, being some of the same elements of damage which the deceased could have recovered, and which would thus have been part of his estate had he done so, and would have, on his death, come to these heirs. We conclude that the heirs stand in such representative capacity here as to have the right of waiver.

As to evidence obtained from an autopsy, we have no hesitancy in saying that such is not privileged (5 Wigmore on Evidence, 2d ed., sec. 2382, subd. (d); 4 Nichols on Evidence, p. 3622, sec. 97), when not dependent upon, and when capable of being by the physician segregated from,

information which he received as an attending physician. (*Jones v. City of Caldwell*, 23 Ida. 467, 130 Pac. 995.)

The order denying a new trial is reversed and the cause remanded for a new trial. Costs to appellants.

Wm. E. Lee, C. J., and Givens, J., concur.