## CARMODY *v.* CAPITAL TRACTION COMPANY.*

EVIDENCE; PHYSICIANS AND SURGEONS; CONFIDENTIAL COMMUNICATIONS; OBJECTIONS AND EXCEPTIONS; INSTRUCTIONS TO JURY; BURDEN OF PROOF; NEGLIGENCE.

1. In an action by an administratrix to recover damages for the negligent

---

*Evidence—Result of Autopsy—Privilege.*—For cases passing upon the question of privilege as to information acquired by autopsy, see note to *Thomas* v. *Byron Twp.* 38 L.R.A. (N.S.) 1186.

killing of her intestate, the testimony of physicians as to what was disclosed by an autopsy performed by them on the body of the decedent is admissible, over the objection of the plaintiff, where it appears that the physicians had not attended the decedent during his lifetime and had never seen him. (Construing sec. 1073, D. C. Code, 31 Stat. at L. 1358, chap. 854 prohibiting any physician or surgeon from disclosing, without the consent of the patient or his legal representatives, any confidential information acquired by him in attending the patient in a professional capacity, necessary to enable him to act in that capacity.)

2. An exception which fails to clearly point out to the trial court the grounds of objection and the particular portion of the instruction to which the objection is directed is insufficient, and cannot be made the basis of an assignment of error on appeal. (Following *DeForest* v. *United States*, 11 App. D. C. 458; *District of Columbia* v. *Dietrich*, 23 App. D. C. 577; and *McDermott* v. *Severe*, 25 App. D. C. 276, s. c. 202 U. S. 600.)

3. An instruction asked by the defendant is properly allowed, which states that the jury are "instructed, as matter of law, that if you find that the plaintiff in this case has failed to call and examine as a witness any person who has knowledge of material matters at issue in the case, the fact that the plaintiff has so failed to call and examine such witness creates a presumption that the testimony, if produced, would be unfavorable to plaintiff's case."

4. *Quœre*, whether the failure of the plaintiff in a personal injury case to call the family physician as a witness regarding privileged communications creates a presumption that if the physician had been called his testimony would have been unfavorable to the plaintiff.

5. In an action by an administratrix to recover damages for the alleged negligent killing of her intestate, in which the defense of contributory negligence is not made, but the general defense is that the defendant's act was not the cause of the death of the intestate, it is not error for the trial court to refuse an instruction asked by the plaintiff, to the effect that the burden of proof is upon the defendant to show, by a preponderance of the evidence, that the death of the intestate was caused not from the accident, but from his diseased condition existing prior to the time of the accident. (Citing *Weaver* v. *Baltimore & O. R. Co.* 3 App. D. C. 436; *Harbison* v. *Metropolitan R. Co.* 9 App. D. C. 60; and *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358.)

No. 2733.   Submitted January 8, 1915.   Decided March 1, 1915.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for the alleged negligent killing of the plaintiff's intestate.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Leonard J. Mather* and *Mr. Richard J. Downey* for the appellant.

*Mr. Frank J. Hogan* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant, Ellen Carmody, administratrix of the Estate of John Carmody, plaintiff below, brought this suit to recover damages for the death of her intestate, John Carmody, alleged to have been caused by the negligence of the defendant, the Capital Traction Company.    The jury returned a verdict for defendant, and from the judgment this appeal was taken.

It appears that plaintiff's intestate was struck by one of the defendant's cars, May 31, 1912, and injured, and that he died on September 15, 1912.    The evidence adduced at the trial raised three questions of fact:    (1) Was defendant negligent? (2) Was Carmody guilty of contributory negligence?  and (3) Did the accident cause his death?    The issues presented by this appeal all relate to the question of whether or not death resulted proximately from the accident.

It appears that after the death of Carmody, at the instance of plaintiff's counsel, an autopsy was conducted by two physicians, who testified on behalf of defendant as to the results of their examination into the cause of Carmody's death.    The testimony of these witnesses was objected to by counsel for plaintiff, on the ground that the knowledge gained from the autopsy was confidential and privileged under sec. 1073 of the District Code [31 Stat. at L. 1358, chap. 854], which provides: "In the courts of the District of Columbia no physician or sur-

geon shall be permitted, without the consent of the person afflicted, or of his legal representatives, to disclose any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity: *Provided,* that this section shall not apply to evidence in criminal cases where the accused is charged with causing the death of or inflicting injuries upon a human being, and the disclosure shall be required in the interests of public justice."

It will be observed that the privilege relates to information, confidential in its nature, acquired by a physician or surgeon while attending a patient, necessary to enable him to act in his professional capacity. The privilege extended to a patient by the Code is based upon a sound principle of public policy, which is well defined by Mr. Justice Pitney, in *Arizona & N. M. R. Co. v. Clark,* 235 U. S. 669, 59 L. ed.—, L.R.A. 1915C, 834, 35 Sup. Ct. Rep. 210, as follows: "We would have to ignore the plain meaning of the words in order to hold, as we are asked to do, that the testimony of other witnesses offered by the patient, or the testimony of the patient himself with reference to other matters than communications to the physician, or any averments contained in the pleadings but not in the testimony, amount to a waiver of the privilege. The enactment contemplates that the physician receives in confidence what his patient tells him, and also what the physican learns by a personal examination of the patient. It contemplates that the patient may testify with reference to what was communicated by him to the physician, and in the event only, it permits the physician to testify without the patient's consent. The express object is to exclude the physician's testimony, at the patient's option, respecting knowledge gained at the bedside, in view of the very delicate and confidential nature of the relation between the parties. The statute recognizes that they do not stand on equal terms. The patient is more or less suffering from pain or weakness, distracted by it, ignorant of the nature or extent of his injury or illness, driven by necessity to call in a professional adviser, sometimes with little freedom of choice; he relies, per-

force, upon the physician's discretion, as well as upon his skill and experience, and is obliged by the circumstances of his own condition not only to make an explanation of his ailment or injury, so far as it may be within his knowledge and may be communicable by word of mouth, but also to submit to the more intimate disclosure involved in a physical examination of his person. The physician, on the other hand, is in the full possession of his faculties, and of that knowledge which is power. Manifestly, the patient occupies, for the time, a dependent position. The chief policy of the statute, as we regard it, is to encourage full and frank disclosures to the medical adviser, by relieving the patient from the fear of embarrassing consequences. The question of dealing justly as between the patient and third parties is a secondary consideration."

It is clear that the privilege is extended alone to the patient, and can only be waived by him or his legal representative. It depends wholly upon the confidential relation existing between the patient and his physician. No such relation existed between Carmody and the two surgeons who performed the autopsy. Neither of the surgeons, so far as he knew, had even seen Carmody during his lifetime. It is inconceivable that they could disclose anything at the trial in the nature of confidential information. The relation between a surgeon performing an autopsy and the body of the dead person is not the relation of a physician and patient.

It is well settled that physicians and surgeons may be compelled to testify to the facts disclosed by an autopsy, where the relation of physician and patient did not exist during the lifetime of the deceased. Under such conditions "the evidence does not fall within the inhibition of that provision. A dead man is not a 'patient,' capable of sustaining the relation of confidence toward his physician, which is the foundation of the rule given in the statute, but is a mere piece of senseless clay which has passed beyond the reach of human prescription, medical or otherwise. Moreover, the deceased had not in his life been the patient of Dr. O'Brien. *Freel* v. *Market Street Cable R. Co.* 97 Cal. 40, 31 Pac. 730. The evidence was competent,

and, being revelant to the issue, should have been admitted." *Harrison* v. *Sutter Street R. Co.* 116 Cal. 156, 47 Pac. 1019, 1 Am. Neg. Rep. 403.

A similar holding was made in the case of *Ossenkop* v. *State,* 86 Neb. 539, 126 N. W. 72, where the court said: "In the present case the physician was not employed to examine or treat defendant or any member of his family. The relation of physician and patient did not exist between them. The exhumed body contained no secrets which could be kept within the exclusive knowledge of defendant and the physician. The means of ascertaining the condition of the body was equally within the reach of defendant and the state." No error was committed in admitting the testimony of the surgeons Kenyoun and Taylor.

Error is assigned in relation to certain instructions to the jury. When the court had apparently concluded its instructions to the jury, the following occurred:

Mr. Hogan: May I interrupt your Honor just a moment to ask that your Honor, before you conclude, read our prayer No. 3?

Mr. Mather: May I ask whether the prayer was allowed, because it was refused this morning?

The Court: Yes; I had intended to give it to the jury.

To which ruling of the court exception was taken and the same was duly noted by the court upon its minutes.

The Court: You are instructed, gentlemen, as a matter of law, that if you find that the plaintiff in this case has failed to call and examine as a witness any person who has knowledge of material matters at issue in the case, the fact that plaintiff has so failed to call and examine such witness creates the presumption that the testimony, if produced, would be unfavorable to plaintiff's case.

After giving this prayer in the language requested by counsel for defendant, the court, of its own motion, proceeded as follows: "Now, you are not to carry that instruction beyond what

it means. You will have a right to assume that the testimony of such a witness, if called, would be unfavorable to plaintiff. You have no right to assume that it would have been conclusive of the case, and that it would have ended the matter. You have only the right to assume it would have been unfavorable to the plaintiff, and for that reason he was not called; and likewise the plaintiff had the right to avail himself of sec. 1073 of the Code [31 Stat. at L. 1358, chap. 854], which does not allow the family physician to be called by the defendant as a witness in the case. It was her privilege to refuse to allow him to testify, but that fact is not, in the judgment of the court, sufficient to exclude or prevent you from applying the rule that I have just given to that witness, as well as any other witnesses."

After certain other instructions were given, and the case had been given to the jury, counsel for plaintiff, addressing the court, said: "I desire to renew my exceptions already taken." To which the court replied: "All the exceptions will be preserved to you."

It will be observed that exception was only preserved to the giving of that portion of the above instructions which was requested by counsel for plaintiff. It is settled law in this jurisdiction that a mere exception, which fails to clearly point out to the trial court the ground of objection and the particular portion of an instruction to which the objection is directed, is insufficient, and cannot be made the basis of a proper assignment of error on appeal. *Hinde* v. *Longworth,* 11 Wheat, 199, 6 L. ed. 454; *Moore* v. *Bank of the Metropolis,* 13 Pet. 302, 10 L. ed. 172; *Camden* v. *Doremus,* 3 How. 515, 11 L. ed. 705; *United States* v. *McMasters,* 4 Wall. 680, 18 L. ed. 311; *Burton* v. *Driggs,* 20 Wall. 125, 22 L. ed. 299; *Noonan* v. *Caledonia Gold Min. Co.* 121 U. S. 393, 30 L. ed. 1061, 7 Sup. Ct. Rep. 911; *District of Columbia* v. *Woodbury,* 136 U. S. 450, 34 L. ed. 472, 10 Sup. Ct. Rep. 990; *Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 64, 69, 48 L. ed. 96, 101, 24 Sup. Ct. Rep. 24, 15 Am. Neg. Rep. 230; *McDermott* v. *Severe,* 202 U. S. 600, 610, 50 L. ed. 1162, 1168, 26 Sup. Ct. Rep. 709, affirming 25 App. D. C. 276, 289; *De Forest* v. *United States,*

11 App. D. C. 458, 461; *District of Columbia* v. *Dietrich*, 23 App. D. C. 577, 580.

The prayer requested was a proper one relating generally to the whole case. If counsel objected to it as including within its general scope the suppression of the testimony of the family physician, he should have so stated, and not have relied upon a general exception, which was not made to a ruling of the court upon either a general or special objection. No objection whatever was interposed to the granting of defendant's prayer. Counsel for defendant asked the trial justice if he had decided to grant the prayer which he had refused in the morning, to which the court replied in the affirmative, and, without any objection whatever calling for a ruling, counsel for plaintiff excepted. Not only was the prayer general, but the court in the modified instruction, to which no objection or exception whatever was made, indicated that the rule stated in the prayer was intended to apply not only to the family physician, but as well "to any other witnesses," implying clearly that there were other witnesses and other testimony within the scope of the prayer. This implication is amply supported by the record. We must not, however, be understood as expressng any opinion upon the more difficult question which would have arisen had counsel for plaintiff, by timely objection, stated as ground therefor that the objectionable feature of the prayer, as modified by the court, consisted in a statement that the failure of plaintiff to call the family physician as a witness regarding those matters exempted by statute created a presumption that if he had been called his testimony would have been unfavorable to plaintiff.

The remaining assignment of error relates to the refusal of the court to grant an instruction requested by counsel for plaintiff, casting the burden of proof upon defendant, of establishing, by a preponderance of the evidence, that the death of plaintiff's intestate was caused not from the accident, but from his diseased condition, which existed prior to the date of the accident. Plaintiff assumed the general burden of establishing that Carmody's death was caused "by the wrongful act, neglect, or default" of defendant. D. C. Code, sec. 1301 [31 Stat. at L.

1394, chap. 854]. The defense that Carmody's death was not the proximate result of the accident was not an affirmative defense. On the whole case, therefore, the burden was cast upon plaintiff of proving her right to recover. If the evidence established that Carmody's death was caused from disease, and not from the accident, plaintiff simply failed to sustain the burden which the law cast upon her.

No defense of contributory negligence is here relied upon, but the general defense that defendant's act was not the cause of Carmody's death. Hence there is no analogy between this case and the affirmative defense of contributory negligence in personal injury cases. The defense of contributory negligence implies an admission on the part of defendant that it was guilty of the negligent act which caused the injury, but that the injured party was guilty of negligence that contributed to cause the injury.

The general burden is on the plaintiff of establishing her whole case by a preponderance of the evidence to the satisfaction of the jury. "The questions of evidence that arise in actions for death are, for the most part, the same as those that arise in ordinary personal injury cases.

\*   \*   \*   As in other actions, the burden of proof is upon the plaintiff to establish his case, including the fact that the death was caused by the wrongful act or neglect of the defendant, by a preponderance of evidence. Tiffany, Death by Wrongful Act, 2d ed. 1913, § 189.

This rule has been followed in this jurisdiction. In *Weaver* v. *Baltimore & O. R. Co.* 3 App. D. C. 436, the court said: "The burden is always upon the plaintiff to make out his case. Where negligence furnishes the cause of action it must be proved by the party alleging it. There are some cases in which it has been said that the law presumes negligence on the part of the carrier from the mere happening of an accident to a passenger. This is not a strictly accurate statement of the law. The most that can properly be said is that when an injury occurs through some accident to the means of transportation, which is under the management of the carrier's employees, and

which, if they exercised proper care, cannot ordinarily happen, it affords reasonable evidence, in the absence of explanation, from which negligence may be inferred. *Western Transp. Co. v. Downer,* 11 Wall. 129, 20 L. ed. 160; *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 555, 35 L. ed. 271, 11 Sup. Ct. Rep. 653; *Baltimore & O. R. Co.* v. *Stale,* 63 Md. 135; *Curtis* v. *Rochester & S. R. Co.* 18 N. Y. 543, 75 Am. Dec. 258, 9 Am. Neg. Cas. 606; *Federal Street & P. Valley R. Co.* v. *Gibson,* 96 Pa. 83, 10 Am. Neg. Cas. 106; *San Antonio & A. P. R. Co.* v. *Robinson,* 73 Tex. 277, 11 S. W. 327; *Scott* v. *London Docks Co.* 3 Hurlst. & C. 596, 34 L. J. Exch. N. S. 220, 11 Jur. N. S. 204, 13 L. T. N. S. 148, 13 Week. Rep. 410." See also *Harbison* v. *Metropolitan R. Co.* 9 App. D. C. 60, 9 Am. Neg. Cas. 168; *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358.

The judgment is affirmed, with costs. *Affirmed.*