KONIGUNDA FELSKA, Plaintiff, *v.* THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS, Defendant.

Supreme Court, Erie County, August 5, 1932.

*Joseph S. Kaszubowski*, for the plaintiff.

*Dudley, Stowe & Sawyer* [*Roy P. Ohlin* of counsel], for the defendant.

HARRIS, J.   This action was brought to recover on a policy of life insurance issued by the defendant May 15, 1929, in the sum of $385 on the life of one Agnes B. Soo, in which policy the plaintiff is designated as beneficiary.   The insured died in the Buffalo City Hospital at the city of Buffalo, N. Y., on December 15, 1930. After the proof of the above facts and the facts hereinafter mentioned it was stipulated that due proofs of notice had been furnished the defendant by the plaintiff.   After such stipulation, counsel agreed to waive the further trial of the action by jury and that the issues of fact and law herein should be disposed of by the court without a jury.

The policy contained the following provisions: " Policy When Void.   This policy shall be void: (1) if the Insured has been rejected for insurance by this or any other company, society or order; or has attended any hospital, or institution of any kind engaged in the care or cure of human health or disease, or has been attended by any physician, within two years before the date hereof, for any serious disease, complaint or operation; or has had before said date any pulmonary disease, cancer, sarcoma, or disease of the heart or kidneys; unless each such rejection, medical and hospital attendance and previous disease is specifically waived by an endorsement in the space for endorsements on Page 4 hereof signed by the Secretary;

" This policy shall not take effect unless upon its date the insured shall be alive and in sound health   *   *   *."

The defendant claims that it has established the following defenses:

1. That the insured was not in sound health on May 15, 1929, the date of said policy.

2. That insured had been treated by a physician or physicians for a serious disease or complaint within two years of the date of the issuance of the policy.

3. That the insured was suffering from a disease of the heart prior to the date of such policy.

4. That at various times prior to the issuance of the policy and within two years of the date thereof the insured had attended a hospital engaged in the care or cure of human health or disease.

To establish such defenses the defendant called Dr. William F. Jacobs, who testified that he is the pathologist at the Buffalo City Hospital and that he had never treated the insured during her lifetime but had performed an autopsy on her body; that from such autopsy he found that the insured was suffering from cirrhosis of the liver, enlarged spleen, gastritis, diseased kidneys, degeneration of the heart and general arteriosclerosis; that such various diseases had

their beginning some ten years prior to death and that for the three years last prior to death the diseases had progressed so that health was seriously impaired, and continued so until the time of death; that such condition of the insured had been caused by the excessive use of alcohol. This testimony of Dr. Jacobs was received over objection of the plaintiff, such objection being made on the ground that the testimony was privileged under section 352 of the Civil Practice Act.

Over the objection of the plaintiff, the defendant also proved that the insured was a patient in the Buffalo City Hospital on various dates between the years 1922 and 1930 and that she was in such hospital, particularly from March 18, 1928, to May 14, 1928. The defendant further proved a series of convictions of the insured for public intoxication and disorderly conduct between 1922 and 1930, several of which convictions showed that on the same she had been committed to the Buffalo City Hospital.

The first question to be discussed is whether the prohibition contained in section 352 of the Civil Practice Act forbade the receiving of the testimony of Dr. Jacobs. The material provisions of such section are as follows: " Physicians and nurses not to disclose professional information. A person duly authorized to practice physic or surgery, or a professional or registered nurse, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity; * * *."

The purpose of the Legislature in adopting that section is very clearly and ably discussed by Mr. Justice HUBBS (now of the Court of Appeals) in *Hethier* v. *Johns* (198 App. Div. 127) as follows: "By such statute the State adopted the policy of giving protection to those who were required to procure the services of physicians from disclosure of secrets imparted to such physicians by patients. The purpose of the statute was to protect the relationship of physician and patient, and to save the patient from possible disclosure by his physician which might result in his embarrassment or disgrace. It was supposed that the good accomplished by preventing disclosures by a physician and by inspiring confidence between patients and their physicians would outweigh the injustice in particular cases which might be caused by the exclusion of the physician's testimony under the provisions of such statute."

In *Griffiths* v. *Metropolitan Street Railway Company* (171 N. Y. 106) the court stated (at p. 111): " To bring the evidence of a physician within the prohibition of the Code section above quoted, three elements must coincide: 1. The relation of physician and patient must exist. 2. The information must be acquired while

attending the patient. 3. The information must be necessary to enable the physician to act in that capacity."

The admissibility of Dr. Jacobs' testimony depends on whether or not the relation of patient and physician existed between the deceased and himself at the time of the autopsy. Examination at this time and on another recent occasion, which the court has endeavored to make careful and searching, does not reveal any case in this State which discusses or passes on a similar situation. The cases outside of the State which discuss similar propositions all uniformly hold that a patient is a person under medical or surgical treatment and that a deceased body is not a patient, and that, therefore, the relation of physician and patient ends when the death of the patient ensues. (*Travelers Ins. Co.* v. *Bergeron,* 25 F. [2d] 680, and cases therein cited; *Harrison* v. *Sutter Street R. Co.,* [1897] 116 Cal. 156; 47 P. 1019; *Carmody* v. *Capital Traction Co.,* [1915] 43 App. D. C. 245; *Sprouse* v. *Magee,* 46 Ida. 622; 269 P. 993.)

The learned writer, Wigmore, in his work on Evidence (2d ed.), section 2382, says as follows: " The confidence which is protected is that only which is given to a professional physician during a consultation with a view to a curative treatment; for it is that relation only which the law desires to facilitate. * * * An autopsy of a corpse is of course not privileged."

There is one case which arose in the State of Michigan (*Thomas* v. *Byron,* 168 Mich. 593) which discusses this same question, and in such action the court excluded the testimony because the person testifying as to the autopsy was also the attending physician. Apparently, the court felt that his findings on the autopsy were partially based upon his knowledge as attending physician obtained before the death of the patient.

On the basis of logical reasoning and on the authorities above cited, this court is of the opinion that on her death the insured ceased to be a patient and that the testimony of Dr. Jacobs was properly admitted. Based on such testimony, the court feels justified in making a finding of fact that within the dates excluded by the policy, the deceased was suffering from a disease which would make the policy void.

The plaintiff objected to the proof of the defendant that the deceased insured had been a patient at the hospital at various times, including the period of two years prior to the death of such deceased insured, and the plaintiff further objected to the proof that the deceased became habitually intoxicated and was treated at the hospital for such intoxication. It is law that a doctor may testify as to dates on which he treated a patient ( *Klein* v. *Prudential*

*Ins. Co.*, 221 N. Y. 449), and, therefore, it would be illegal to refuse proof as to the dates on which a patient was in a hospital. The proof of the habitual intoxication of the deceased insured was proper in that it afforded a corroboration of the conclusions testified to by Dr. Jacobs. The plaintiff did not object to the manner of proof of hospitalization or of habitual intoxication, but did object to the introduction of proof made by the testimony of Dr. Jacobs and by the records of the hospital and of the City Court, and on such testimony being received, made a motion to strike out the same. In view of the fact that the court is convinced that such testimony in each of its items was admissible, such motions of the plaintiff are denied.

Based on the testimony of Dr. Jacobs and the other testimony in the case, the court has come to the conclusion that the defendant is entitled to findings of fact that the insured was not in sound health on the date of the issuance of the policy and had been treated at the Buffalo City Hospital for a serious disease or complaint within two years of the date of the issuance of the policy, and that prior to the date of such policy, the insured was suffering from a disease of the heart. Accordingly, the defendant is entitled to a decision and judgment dismissing the complaint herein.