## EUREKA–MARYLAND ASSUR. CO. v. GRAY.

### No. 7643.

United States Court of Appeals for the District of Columbia.

Argued March 13, 1941.

Decided June 16, 1941.

W. Gwynn Gardiner and James M. Earnest, both of Washington, D. C., for appellant.

Richard R. Atkinson and Thurman L. Dodson, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

This is a suit on an industrial life insurance policy. The important clause is as follows:

"No obligation is assumed by the Company prior to the date hereof, nor if within two years preceding such date the Insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease, or has undergone any surgical operation, or has been attended by a physician, unless it shall be shown by the Insured or any claimant that no such institutional, surgical, or medical treatment or attention was for a serious disease, injury, or physical or mental condition; * * * unless reference to such institutional, surgical, or medical treatment or· attention * * * is endorsed on this Policy by the Company.

\*      \*      \*      \*      \*      \*

"This Policy contains the entire agreement between the Company and the Insured, and the holder and owner hereof; * * *"

On the trial, the beneficiary proved that the policy was issued April 11, 1938, the premium paid, and that death occurred in Gallinger Hospital about two months later as the result of "rheumatic heart disease with congestive failure", and rested. Admittedly, there was nothing on the face of the policy to show that insured had ever suffered any illness or had ever had the attention of a physician. The insurance company attempted to prove through Doctor Horn, a practising physician in Washington, that he had treated the insured at weekly intervals during the period between December 25, 1937, and June 6, 1938, the date of her admission to the hospital, and also to prove through the hospital intern the hospital records showing the history, diagnosis, and treatment of insured and the autopsy report. These records, if admitted, would have shown that at the time of admittance to the hospital the insured had stated that since 1937 she had experienced shortness of breath and had tired easily; had ceased working January 1, 1938, and had then consulted her family physician, who had treated her regularly thereafter; that she had been in bed intermittently since January, 1938, and some years previously had been treated for syphilis and for rheumatic heart disease and pulmonary tuberculosis. On objection of counsel for the plaintiff that the evidence tendered was privileged, and was also barred under the provisions of Section 183, Title 5, of the District of Columbia Code,[1] the trial court, for either one or the other reason, struck from the record the evidence of Doctor Horn and held the hospital records inadmissible, and directed a verdict for the plaintiff.

The two questions for decision involve, first, the interpretation of Section 183, Title 5, and its relation to Section 181b of the same title and, 2nd, Section 20, Title 9, of the District of Columbia Code.

*First.* Section 183 provides: "Each life insurance company, benefit order and association doing a life insurance business in the District of Columbia shall deliver with each policy issued by it a copy of the application made by the insured so that the whole contract may appear in said application and policy, in default of which no defense shall be allowed to such policy on account of anything contained in, or omitted from, such application."

The written application—assuming there was one—was admittedly not delivered with or attached to the policy. If the effect of the statute precludes any defense in such circumstances, that ends the case. But the contrary of this was decided by the Supreme Court in Washington Fid. Ins. Co. v. Burton, 287 U.S. 97, 53 S.Ct. 26, 77 L.Ed. 196, 87 A.L.R. 191. There it was held that where the policy definitely declares that it constitutes the entire agreement between the parties—as is the case

[1] Section 183 requires a copy of the application to be delivered to the insured with the policy.

here,—the insurer, notwithstanding its failure to deliver a copy of the application, is entitled to interpose such defenses as would have been open to it if no application had been made. The Court said at page 100 of 287 U.S., at page 27 of 53 S.Ct., 77 L.Ed. 196, 87 A.L.R. 191: "The section [183] does not require written applications to be made or declare that, where one is made but not delivered with the policy, there shall be no defense based on the provisions of the policy itself. And no reason is suggested in support of a construction of the section that would prevent defense based on a provision of the policy, even though a similar or the same provision were contained in an application."

In view of this construction of the statute by the Supreme Court, we are obviously compelled to hold that there is nothing in the section which prevents or obstructs the insurance company from making any defense that it has under the terms of the policy, and this leaves only the question whether the subsequently enacted Section 181b in any degree modifies or changes the law in this respect.

The latter section[2] by its terms applies to cases where payment of the policy is refused because of "unsound health" at or prior to the date of issue of the policy. The forfeiture clause in the present policy is conditioned upon proof that insured had been a patient in a hospital or had undergone a surgical operation or had been attended by a physician for a serious disease or injury and had failed to disclose the facts. But we think the difference immaterial. The obvious design of the statute is to make its terms applicable in all cases in which the defense is that the insured had suffered prior to the issuance of the policy either a serious injury or disease and had concealed the truth from the insurer. The words—unsound health—in the statute cover the several specific grounds named in the policy, and the effect of the section is to shift the burden of proof and to make the good faith of the applicant or the insured—as to the representations on which the policy issues—the test, and by its terms to impose on the insurer the burden of proving the contrary.

Second. The admissibility of the hospital records which the lower court excluded presents a more difficult question. In the District of Columbia there is a statute[3] which provides that "no physician or surgeon shall be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity and which was necessary to enable him to act in that capacity * * *".

In this case the proffered testimony, consisting of hospital records, would have shown that the insured when the policy was issued was suffering from heart disease; that she had received treatment for this from a physician for four months prior to the issuance of the policy; and that she had previously been treated for syphilis and for rheumatic heart disease and pulmonary tuberculosis. We think the rejection of this evidence by the court was correct and was required under the express provisions of the statute. The witness who was offered to prove the records stated that the information came from the lips of the patient. His duty as intern in the hospital required him to obtain it for the records and for use of the attending physician. Counsel for the insurance company argue that an intern, not then licensed to practise, is not a physician within the terms of the statute and, therefore, the information given him by the patient in response to his queries—if proper background for the same is shown—is admissible. But the argument, in view of the language of the statute,

---

[2] Section 181b: "If payment of such a policy shall be refused because of unsound health at or prior to the date of the policy, the good faith of both applicant and insured shall constitute a material element in determining the validity of the policy; and it shall not be held invalid because of unsound health unless the insurer shall prove that, at or before the date of issue of the policy, the insured or applicant had knowledge of, or reason to know, the facts on which the defense is based, or shall prove that the insurance was procured by the insured or applicant in bad faith or with intent to defraud the company, any provision, agreement, condition, warranty, or clause contained in said policy, or endorsed thereon, or added or attached thereto, to the contrary notwithstanding. Proof by the insurer of fraud, intent to deceive, unsound health, bad faith, breach of warranty or condition precedent, or other matter of defense, shall be subject to the provisions of section 183 of this title."

[3] Section 20, Title 9, D.C.Code.

is not persuasive. True enough, the cases in other jurisdictions differ. Among those which in more or less similar circumstances hold the records admissible are Prudential Ins. Co. of America v. Kozlowski, 226 Wis. 641, 276 N.W. 300; Frederick v. Federal Life Ins. Co., 13 Cal.App.2d 585, 57 P.2d 235; Southwest Metals Co. v. Gomez, 9 Cir., 4 F.2d 215, 39 A.L.R. 1416; First Trust Co. v. Kansas City Life Ins. Co., 8 Cir., 79 F.2d 48. Some of those holding the information inadmissible are Culver v. Union Pac. R. Co., 112 Neb. 441, 199 N.W. 794; Stalker v. Breeze, 186 Ind. 221, 114 N.E. 968; Metropolitan Life Ins. Co. v. McSwain, 149 Miss. 455, 115 So. 555; Meyer et al. v. Russell, 55 N.D. 546, 214 N.W. 857. And there is a general discussion of the problem in the annotation in 75 A.L.R. 378; also see Hale, Hospital Records as Evidence (Jan. 1941), 14 So. Calif.L.Rev. 99. These differing views may be summarized in the statement made in the Gomez case that if public policy demands that the privilege of the physician or surgeon should be extended to nurses or other attendants who are neither physicians nor surgeons, the change should be made by the legislature. Whereas in the Culver case the court remarked that a nurse is often necessarily present at conversations between patient and physician and little good would be subserved if the lips of the doctor were sealed by statute but the nurse or attendant standing by might be free to testify.

The local statute is very broad. It forbids disclosure by the physician of any information obtained by him in his professional capacity. The intern is himself a physician. He is a graduate of a medical school with a doctor's degree, though, it may be, not licensed to practice his profession in the ordinary way by so holding himself out to the public. But it is common knowledge that a part of his duty is to get the medical history of the patient, and in this respect he is the attending physician. Not only this, but in many instances he does the work of the physician and, in other respects, relieves the physician of professional services which he would ordinarily perform. It would be straining the law to hold that disclosures made to him by the patient are not equally privileged as those made to the physician in charge.

■ The testimony of Doctor Horn, however, is in a different category. He was asked to testify only to the fact that he had been called to attend and had attended and treated the insured in a professional capacity during the two-year period immediately preceding the issuance of the policy, with the dates of attendance. The lower court rejected this testimony, and we think this was clearly wrong. The answers did not relate to any information secured by the physician from the patient, but only to facts within his own knowledge and material to the insurance company's case that a fraud had been practiced by the insured in denying to the insurer that she had been previously treated by a physician.

■ In the same class, we think, was the evidence of the hospital records showing an autopsy on the insured. The competency of evidence of this character was decided by us in Carmody v. Capital Traction Co., 43 App.D.C. 245, 249, Ann.Cas. 1916D, 706, in which we said the relation between a surgeon performing an autopsy and the body of the dead person is not the relation of physician and patient.

■ Whether the consideration by the jury of the evidence of Doctor Horn and the report of the autopsy would have met the burden of proof which the District of Columbia law places upon the insurer, we have no need to decide. It clearly was evidence which the jury might have considered and which, if regarded by them as showing the bad faith of the applicant and an intent to defraud the company, would have justified a verdict for the insurer.

We are, therefore, of opinion that the court below was in error in directing a verdict for the plaintiff. The judgment must be reversed and the case remanded with instructions to grant a new trial.

Reversed.

VINSON, Associate Justice (dissenting).

The majority state that § 181b places the burden of proof upon the insurer in this case. I agree that § 181b does at least this much and on that issue alone this case should be affirmed rather than reversed.

The majority conclude that the burden of proof is upon the insurer because of the belief that the "unsound health" of § 181b embraces the issues raised by the defense that the insured had concealed the facts of hospitalization and medical consultation. I conclude that the burden of proof is upon the insurer because I believe that § 181b specifically provides that upon any issue of the insured's bad faith in obtaining the pol-

icy the burden of proof is upon the company.

Here is what § 181b did: (1) It placed the burden of proof upon the company to prove (a) unsound health; (b) knowledge of, or reason to know of such unsound health; (c) the bad faith of the insured or his intent to defraud the company. (2) It invalidated any provision, agreement, condition, warranty or clause contained in the policies looking toward the effort of the company to avoid the burden of proof on any item of (1). (3) It stated that proof by the insurer of unsound health, fraud, intent to deceive, breach of warranty or condition precedent, or other matter of defense shall be subject to the provisions of § 183.

The majority state that the important clause of the policy is the one which provides that the company assumes no obligation if the insured has been a hospital patient or has been attended by a doctor unless the insured shows that such treatment or attention was for no serious condition, or unless such treatment or attention is endorsed by the company on the policy which is the entire agreement between insurer and insured. In the light of this statement in the policy and the statutory provision, the company's defenses are considered.

In the lower court the company defended (1) on the ground of unsound health, (2) that the insured within two years preceding the date of issuance of the policy had been a patient in certain institutions and treated for the diseases alleged to constitute unsound health, and (3) had been attended, within said two years, by a physician for treatment of these diseases. In this court the company's defenses are the same except it states that its primary defense is not unsound health, but if it be deemed that it is in fact defending on unsound health, its appeal is still meritorious.

It should be remembered that the insured made no representation as to his health or past medical history in the policy, but the company seeks to avoid liability because of the policy provision set out above which the majority have called the important clause. The clause has no significance in my opinion. Section 181b states that the burden of proof is upon the insurer; with that the majority agree; section 181b further states that this is true "any provision * * * in said policy * * * to the contrary notwithstanding". The instant policy states that the company assumes no ob-ligation if the insured has had attention or treatment at a hospital or by a doctor within the preceding two years, *"unless it shall be shown by the Insured* or any claimant that no such [treatment or attention] was for a serious * * * condition". To my mind Congress could scarcely have found a better illustration of a clause contrary to the burden of proof laid down in § 181b, unless a company would be so naive as to say "Whenever the applicable statutes place a burden of proof upon us, the insured agrees to carry that burden for us." At the very best, the so-called forfeiture provision merely sets out two ways in which bad faith or intent to defraud may be shown, but it cannot, in light of the statute, shift any part of the insurer's burden of proof to the shoulders of the insured, such as requiring the insured to show that he did not have a serious ailment instead of the company showing that he did. Moreover, I do not feel that the record even comes close to showing the assumption by the insurer of this burden.

The court reverses for failure to permit certain testimony to be introduced. I agree that the testimony of the interne with respect to the hospital records falls within the privilege statute, and that such testimony being timely objected to was inadmissible. The majority, however, hold that the autopsy report, which was a part of the hospital records, should have been admitted. With this I cannot agree. The record does not disclose the contents of the autopsy report. In a case where the autopsy report was properly proved, under our holding, it would not fall within the privilege statute, but the refusal to admit it in this case is not shown to be prejudicial.

This leaves the other reason assigned for reversal, namely that Dr. Horn should have been permitted to testify that he had attended the deceased within two years immediately preceding the date of the policy, with the dates of attendance. The court is of the opinion that his testimony would tend to show that "a fraud had been practiced by the insured in denying to the insurer that she had been previously treated by a physician". The policy does not state that the insured had or had not been treated by a physician within two years immediately preceding the date of the policy. The only place in the policy where there is any reference to treatment by a physician is in the forfeiture provision

which would permit the avoiding of the policy by the insurer in the event that such medical treatment had taken place within the time prescribed. As I have attempted to point out this so-called forfeiture provision cannot be effective. I do not maintain that the evidence of Dr. Horn in this respect was not competent testimony, but I think that it alone would not sustain the defense. There was no other competent evidence in this case tending toward establishing unsound health, bad faith or intent to defraud. Under the majority's interpretation of the statute, there was nothing that precluded the company from the introduction of such evidence if it were available. The testimony as to the medical attendance which should have been admitted may well have been for an ailment entirely disassociated with the diseases the insured is alleged to have had, or for ailments minor in character and foreign to the diseases relied upon in the answer, and, of course, it may have been for the ailments which caused the death of the insured, or the ailments relied upon in the answer, but a conclusion by a jury should not be reached by pure speculation.

Not only was it incumbent upon the insurer to prove unsound health, but § 181b speaks of the knowledge of the applicant or insured, or reason to know that she was in unsound health. The record is definitely silent in respect of such knowledge, or reason to know, on the part of the insured. The attendance of a doctor, with nothing else, does not meet the burden of proof laid down in the statute. So had the Doctor's testimony been admitted, under the state of the record, I would be compelled to view it as a proper case to direct a verdict for the plaintiff. Hence, I see no error in the action of the lower court, and dissent from the reversal.

What has been said is sufficient to dispose of this case but since the majority are of the view that the full force and effect of the rule of the Burton case has in no way been altered by § 181b I feel that there is a call for further discussion.

Section 183 requires the insurance company to attach the application to the policy "In default of which no defense shall be allowed to such policy on account of anything contained in, or omitted from, such application." Since the application would normally question the prospective policyholder on all matters which the insurer deemed material to its assumption of the risk, it might well seem that any information which the applicant withheld would be something omitted from his statement, and hence the insurance company could not defend on the ground that it had been intentionally misled unless it attached the application to the policy. That way it can be known exactly what representations were made and what were not.[1] And this court took that position in the Burton case. The Supreme Court reversed. Mr. Justice Stone and Mr. Justice Brandeis dissented, saying in part: "The defense here was that the insured was not in sound health at the date of the policy. Petitioner sought to establish it by showing that the state of health of the insured, then deceased, had been bad for several years before the policy was issued. If the written application were before the Court and revealed that the insured had been asked about his condition of health and had either answered fully and truthfully, or not at all, it would show, I think, that the defense, within the very meaning and purpose of the statute, was 'on account' of something 'contained in or omitted from the application,' and that the petitioner was precluded from making it."[2]

Congressional action on industrial insurance policies awaited this decision.[3] After the decision Congress passed a bill amending the District Code in respect of insur-

---

[1] On the policy now involved appears this note in small print: "Please read your Policy and if *not* correct, satisfactory, or *in accordance with your application*, return it at once as the acceptance of it will be taken as a guarantee to this Company, that you have carefully read (or had it read), and fully understand its contents." (Ital. supplied) How is the insured to know whether the policy is in accordance with his application if the company flouts the requirement of § 183 and does not attach a copy of the application to the policy? Courts do not even expect alert lawyers trained in the study of language to make such comparisons from memory.

[2] Washington Fid. Ins. Co. v. Burton, 287 U.S. 97, 102, 53 S.Ct. 26, 28, 77 L. Ed. 196, 87 A.L.R. 191.

[3] This is evidenced by letter from L. H. Reichelderfer, President Board of Commissioners of the District of Columbia, to Hon. Arthur Capper, Chairman Committee on the District of Columbia, United States Senate, dated January 7, 1933, reprinted Senate Report No. 1207, Feb. 10, 1933, at page 4.

ance to the form in which it now stands. Both the House and Senate Committees said that "The bill is designed for the protection of holders of industrial life-insurance policies." Section 181a now reads that such policies "Shall be subject to the following conditions, in addition to any others prescribed by law". Section 181b after stating that the burden of proof is upon the insurer in all those respects which I have previously pointed out and after stating that no policy provision can alter the burden reads: "Proof by the insurer of fraud, intent to deceive, unsound health, bad faith, breach of warranty or condition precedent, or other matter of defense, shall be subject to the provisions of section 183 of this title."

Thus it may well have been that Congress intended that in this type of policy the insurer to meet his new burden of proof had to file the application with the policy pursuant to the mandate of § 183. For some reason the insurance company here chose to disregard the plain requirement of § 183. I am not ready to agree with the view of the majority that § 181b in no way alters the full force and effect of the Supreme Court's decision in the Burton case.