**William H. WALTON, and W. W. Chambers, Jr., a sole proprietor, doing business as W. W. Chambers Co., Appellants,**

**v.**

**SUN LIFE INSURANCE COMPANY of America, a corporation, Appellee.**

**No. 1621.**

Municipal Court of Appeals for the District of Columbia.

Argued April 4, 1955.

Decided June 16, 1955.

Joseph G. Dooley, New York City, with whom Victor J. Orsinger, Washington, D. C., was on the brief, for appellants.

John E. Powell, Washington, D. C., with whom Arthur P. Drury and John M. Lynham, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Plaintiffs appeal from a judgment in favor of defendant life insurance company in an action to recover $750 on an industrial life insurance policy. Plaintiff Walton is the named beneficiary of the policy. Plaintiff Chambers, an undertaker, is Walton's assignee to the extent of $720.69 to secure payment of funeral expenses of the insured, Grace Walton. The policy was issued August 25, 1952, and death occurred on May 12, 1954, within the two year contestable period. The company defended under the following provision of the policy:

"Policy when Voidable—If, within two years prior to the date of issue of this policy, the Insured has been rejected for life insurance by this or any other insurer, or has received institutional, hospital, medical, or surgical treatment or attention, and the Insured or any claimant under the policy fails to show that the condition occasioning such treatment or attention was not of a serious nature or was not material to the risk, this policy shall, subject to the clause entitled 'Incontestability,' be voidable by the Company either before or after any claim, unless reference to such treatment or attention, or such prior rejection, is endorsed on this policy by the Company; provided, however, that this policy shall not be voidable because of absence of endorsement referring to any information which was disclosed in a written application for this policy. If this policy is voided by the Company, the Company's liability shall be limited to an amount equivalent to all premiums paid, without interest."

Unquestioned hospital records established that from March 21 to March 28, 1952, and from July 31 to August 7, 1952 (both periods being within two years of issuance of the policy) the insured had been self-committed at District of Columbia General Hospital for treatment for the effects of alcoholism. On the first of the occasions she was admitted with impending delirium

tremens; on the second occasion she was suffering from delirium tremens when admitted. On both occasions the final diagnosis was: "Alcoholic Psychosis, Acute Hallucinosis." The death certificate showed "Lobar Pneumonia" as the cause of death and "Chronic Cardio Renal Hepatic Disease" as a condition contributing to death but not related to the disease causing death.

The trial court found that the two hospital treatments above mentioned were for a debility of a serious nature and denied recovery because of the policy provision above quoted.

On this appeal it is contended that the trial court was in error in finding that the insurance company had sustained its burden of proving hospitalization of insured for a condition of a serious nature. It is argued that "alcoholism is not within the zone of health conditions which affect rights and liabilities under insurance policies." New York Life Ins. Co. v. Hoffman, 238 Ala. 648, 193 So. 104, is cited as supporting this proposition, but it goes no further than to hold that it was a question for the jury whether chronic alcoholism was a disease which increased the risk of loss. In the present case the trial court found as a fact that insured's hospitalization had been for a condition of a serious nature, and this finding was amply supported by medical testimony.

Appellants also argue that the trial court was in error in not finding that the insured applied for the policy in good faith. The trial court ruled that the good faith of insured was not in issue. Appellants insist

it was because of District of Columbia Code 1951, § 35–1002.[1]

In this case the written application, assuming there was one, was not attached to the policy, and the policy provided that it constituted the entire contract. D.C.Code, 1951, § 35–203, provides that where the application is not attached to the policy "no defense shall be allowed to such policy on account of anything contained in, or omitted from, such application." In Washington Fid. Nat. Ins. Co. v. Burton, 287 U.S. 97, 53 S.Ct. 26, 77 L.Ed. 196, 87 A.L.R. 191, it was held that where a policy declares that it expresses the entire agreement Code Section 35–203 does not prevent any defense which would have been open to the insurer if no application had been made. Code Section 35–1002 was enacted after the Burton decision, but it was held in Eureka-Maryland Assur. Co. v. Gray, 74 App.D.C. 191, 121 F.2d 104, certiorari denied 314 U.S. 613, 62 S.Ct. 114, 86 L.Ed. 494, that the subsequently enacted provision did not change the rule announced in the Burton decision.

However, we understand Eureka-Maryland Assur. Co. v. Gray, supra, and its companion case, Pullen v. Sun Life Ins. Co. of America, 74 App.D.C. 197, 121 F.2d 110, certiorari denied 314 U.S. 613, 62 S.Ct. 112, 86 L.Ed. 494, to hold that where the defense, whether based on the application or on a provision of the policy, is one of unsound health, the good faith of the applicant or insured is the test and the burden is on the insurer to prove bad faith. Accordingly we think the trial court was required to make a finding on that issue.

1. If payment of such a policy shall be refused because of unsound health at or prior to the date of the policy, the good faith of both applicant and insured shall constitute a material element in determining the validity of the policy; and it shall not be held invalid because of unsound health unless the insurer shall prove that, at or before the date of issue of the policy, the insured or applicant had knowledge of, or reason to know, the facts on which the defense is based, or shall prove that the insurance was procured by the insured or applicant in bad faith or with intent to defraud the company, any provision, agreement, condition warranty, or clause contained in said policy, or endorsed thereon, or added or attached thereto, to the contrary notwithstanding. Proof by the insurer of fraud, intent to deceive, unsound health, bad faith, breach or (of) warranty or condition precedent, or other matter of defense, shall be subject to the provisions of section 35–203."

■ Another point requires consideration. The voidability section of the policy, hereinbefore set forth, provides that the policy is not voidable when reference to the "treatment or attention" is endorsed on the policy. In this case the policy disclosed no such endorsement. But there is the further provision that the policy is not voidable "because of absence of endorsement referring to any information which was disclosed in a written application for this policy." Therefore, to establish the voidability of the policy it was necessary for the company to prove (1) the treatment, (2) lack of reference thereto by endorsement on the policy, and (3) lack of disclosure thereof in the application, if there was a written application. However, if there was a written application in the instant case—and the record is silent on the subject—the insurance company could not prove this third point, because it failed to attach the application and therefore by Code Section 35–

203 it is prevented from defending on account of anything contained in or omitted from the application. Assuming there was a written application, the company by failing to attach it has effectively barred itself from declaring the policy void. Our ruling is not contrary to the Burton case because the holding there was that the company could defend on a policy provision which had "no relation to the application." [287 U.S. 97, 53 S.Ct. 27.] Here the policy provision by its own express terms has a direct relation to the application.

The judgment must be reversed and the cause remanded to the trial court to determine first whether there was a written application, and, if it finds there was such an application, judgment should be entered for plaintiffs. If it finds there was no application, then it should decide the issue of the insured's good faith.

Reversed with instructions.