Mary E. FERGUSON, Appellant,

v.

QUAKER CITY LIFE INSURANCE CO., Appellee.

No. 2181.

Municipal Court of Appeals for the District of Columbia.

Argued May 26, 1958.

Decided Dec. 2, 1958.

5. Cf. Ketchum v. United States, 5 Cir., 1958, 259 F.2d 434, 436–437.

Everett L. Edmond, Washington, D. C., for appellant.

John A. Kendrick, Washington, D. C., with whom W. Cameron Burton, Thomas B. Heffelfinger, and Ward B. McCarthy, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Before us for the second time is a suit to recover on an industrial life insurance policy taken out by appellant on the life of her son. Appellant is designated as beneficiary in the policy, issued July 12, 1954. The company defended on a section of the insurance contract which renders the policy voidable if within two years prior to the date of issue the insured had received institutional, surgical, or medical treatment for a serious disease or physical condition. Relying on this same defense in the first trial, the company attempted to prove through autopsy reports and hospital records, admitted in evidence, that the insured had been hospitalized and

treated for a serious physical condition (lymphosarcoma) approximately three months before application was made for insurance. Without deciding the admissibility of the autopsy reports, we reversed the judgment in favor of the company and ordered a new trial, holding *inter alia* that the hospital records were privileged under Code 1951, § 14–308 (Supp. VI), in so far as the information contained in them related to diagnostic matter and treatment. Ferguson v. Quaker City Life Insurance Co., D.C.Mun.App., 129 A.2d 189.

■ On retrial, hospital records were properly admitted for the limited purpose of establishing the dates of the insured's admission into veterans' hospitals at Perry Point, Maryland, and Mt. Alto in the District. Kaplan v. Manhattan Life Ins. Co., 71 App.D.C. 250, 109 F.2d 463. These records show the insured first entered Perry Point on March 16, 1954, and that he was later transferred as a patient to Mt. Alto, where he stayed until April 20. He was hospitalized again from June 28 to July 8, and on November 22 he was readmitted to Mt. Alto and remained there until his death in mid-December of 1954. To establish that these hospitalizations were due to a serious disease or physical condition, the insurer supplemented the autopsy reports, received over appellant's objection, with the testimony of Dr. John S. Howe, pathologist and chief of the laboratory service at Mt. Alto Hospital. Dr. Howe testified that he had never treated or attended the insured during his lifetime, but that in his capacity at the hospital he had examined biopsy tissue of the insured sent to the laboratory from Perry Point and had supervised the autopsy. From the post-mortem examination he found that the insured had been suffering from "extensive lymphosarcoma" or cancer of the lymphatic tissues; that this disease is usually fatal; that the period of time from the onset of the first symptom to death normally varies from two to three years. He estimated that the disease had been progressing from one year to a year and a half at the time of the insured's hospitalization. On the basis of this evidence, the trial judge found as a fact that the insured was suffering from a serious disease for which he received hospitalization and treatment within two years prior to the date the policy was issued.

Appellant's primary assignment of error in this appeal contests the admission of the autopsy reports and the pathologist's testimony based thereon. Framing her contention more accurately, appellant argues the statutory physician-patient privilege renders this evidence incompetent for two reasons: (1) the autopsy was performed by a member of the staff of the same hospital in which the insured was treated, and these reports therefore form an integral part of the hospital records; and (2) any distinction formerly recognized between clinical diagnosis and post-mortem examination is nullified by the interrelation of the two in modern medicine.

The answer to both arguments lies in the language and purpose of the prohibition. Code 1951, § 14–308 (Supp. VI), provides:

> " * * * [N]o physician or surgeon shall be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity and which was necessary to enable him to act in that capacity, whether such information shall have been obtained from the patient or from his family or from the person or persons in charge of him * * *."

In Carmody v. Capital Traction Co., 43 App.D.C. 245, 249, the court stated: "The chief policy of the statute, as we regard it, is to encourage full and frank disclosures to the medical adviser, by relieving the patient from the fear of embarrassing consequences." And discussing a statute

very much like our own, the Court of Appeals of New York noted that three elements must be present to bring evidence within the sphere of the privilege: (1) the relation of physician and patient must exist; (2) the information must be acquired while attending the patient; and (3) the information must be necessary to enable the physician to act in that capacity. Griffiths v. Metropolitan St. Ry. Co., 171 N.Y. 106, 63 N.E. 808. When viewed in the light of language and purpose, it is not difficult to understand why the courts of this and other jurisdictions have generally rejected the application of the privilege in relation to autopsy evidence. Eureka-Maryland Assur. Co. v. Gray, 74 App.D.C. 191, 121 F.2d 104, certiorari denied 314 U.S. 613, 62 S.Ct. 114, 86 L.Ed. 494; Carmody v. Capital Traction Co., supra; Annotation, 58 A.L.R. 1134. The reasoning is clear. " * * * [T]he relation between a surgeon performing an autopsy and the body of the dead person is not the relation of physician and patient." Eureka-Maryland Assur. Co. v. Gray, 74 App.D.C. at page 194, 121 F.2d at page 107. In such circumstances the surgeon neither treats nor prescribes treatment.

■ Appellant, however, contends that a different result should be reached where the post-mortem examination is performed at the hospital in which the decedent was treated. She argues first that the autopsic findings are privileged as a part of the decedent's hospital records; and secondly, citing Mathews v. Rex Health & Accident Ins. Co., 86 Ind.App. 335, 157 N.E. 467, she stresses that the relationship to be protected in these instances is one of patient and hospital. The distinction appellant advocates was either rejected or not recognized by the courts of other jurisdictions in cases very similar factually to the one before us. Travelers' Ins. Co. of Hartford, Conn. v. Bergeron, 8 Cir., 25 F.2d 680, 58 A.L.R. 1127; Felska v. John Hancock Mut. Life Ins. Co., 144 Misc. 508, 259 N.Y.S. 35. This would also appear to have been the situation in the Eureka

case, although the facts are not clear on this point. However, answering appellant's contentions, we would point out that while our statute is broad, it does not make hospital records per se privileged. Only such matters as relate to diagnosis and treatment are protected. Sher v. De Haven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937, certiorari denied 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363; Kaplan v. Manhattan Life Ins. Co., supra. Reports of post-mortem examinations would therefore not be privileged as they relate to neither of these. Appellant's other argument ignores the purpose of the prohibition. It is not a patient-hospital relationship that the law protects, but as Wigmore says in his treatise (8 Wigmore, § 2382 (3d ed. 1940)):

"The confidence which is protected is that only which is given to a professional physician during a consultation with a view to a curative treatment; *for it is that relation only which the law desires to facilitate.*" (Emphasis supplied.)

■ Finally, with great particularity in her brief, appellant points out that treatment and pathology are so inextricably related in modern medicine, " * * * it can no longer be said that the information obtained in the treatment of the patient is not utilized in guiding an efficient post-mortem examination." We are not in a position to dispute this statement; but in determining whether evidence is privileged, a court must confine itself to an examination of the testimony offered or the contents of the reports before it, and if this evidence is free of matter pertaining to treatment or diagnosis, it is admissible. Case authority holds that a surgeon may testify as to his post-mortem findings on a patient he attended before death if the information he gives is segregated from information he acquired as an attending physician. Sprouse v. Magee, 46 Idaho 622, 269 P. 993; Chadwick v. Beneficial Life Ins. Co., 54 Utah 443, 181 P. 448,

The testimony of Dr. Howe in the present case, to which appellant objected, related only to objective laboratory findings derived from the post-mortem examination. If information obtained in the course of treatment was significant in guiding the autopsy, his testimony does not so indicate. We therefore conclude that the evidence in dispute was competent and sufficient to support the court's finding.

In her other assignment of error, appellant charges that the company has not carried the burden of proof imposed on it by statute. This point was discussed in the previous appeal of this case. The effect of our earlier decision was to hold that although the Voidability Section of the policy casts the burden on the claimant to establish that the insured's hospitalization was not due to a serious disease, the standard governing the burden of proof is that imposed under Code 1951, § 35-1002, rather than that of the policy's terms. Under this section the insurer who refuses payment on the defense of unsound health prior to the issuance of the policy has the burden of proving (1) unsound health, (2) knowledge of or reason to know of the insured's health condition, and (3) the bad faith of the insured and/or the applicant or an intent to defraud the company. All of these elements are material in determining the validity of the policy. A review of the record in this case indicates that both the company and the trial judge followed the ruling of this court closely on retrial. The insurer's proof was consistent with the statutory burden, and findings of fact were made on each of these elements by the trial judge. On the issues of knowledge and bad faith, we think the evidence was sufficient to support a finding that appellant was aware of the insured's hospitalization and had visited him at Perry Point prior to her application for insurance and that she withheld this information from the company.

The decision of the court for the insurance company will be

Affirmed.